ALBION RURITAN CLUB, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, J. Thomas Johnson, Director, *et al.*, Defendants-Appellants.

Fifth District   No. 5—90—0139

Opinion filed March 6, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for appellants.

No brief filed for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On December 7, 1985, Albion Ruritan Club (Albion) filed a certification of exemption request with the Department of Revenue, seeking a property tax exemption for 2.51 acres of land in Edwards County. The County Board of Review recommended that Albion receive a full-year exemption for the property; however, the Department of Revenue (Department) denied the exemption. At Albion's request, an administrative hearing was then conducted, and the administrative law judge recommended that Albion's application be denied because it failed to establish that it was a charitable organization and failed to establish that it used the property for charitable purposes during 1985. On June 3, 1986, the Department approved the administrative law judge's recommendation.

Albion filed a complaint for administrative review with the circuit court, praying that the circuit court reverse the decision of the Department. On February 2, 1990, the circuit court entered an order reversing the decision of the Department and awarding Albion the real estate tax exemption for 1985 for the land and improvements owned by Albion. The Department filed this appeal.

At the hearing before the administrative law judge, John Lundmark, secretary of the Albion Ruritan Club, testified that Albion purchased the parcel in question on February 19, 1975. There is a 30- by 63-foot square post building on the parcel. The building has metal siding and concrete flooring. The interior is unfurnished and unfinished and is essentially a large area with water service for washrooms and sinks, a large space heater suspended from the ceiling and electric service. Neither the building nor the land owned by Albion is used by anyone other than Albion.

Lundmark offered into evidence Albion's national constitution, which lists Albion's objectives as follows:

"(a) To promote fellowship and good will among its members and the citizens in the community, and to inspire each other to higher efforts.

(b) To unify the efforts of individuals, organizations and institutions in the community toward making it an ideal place in which to live.

(c) To work with those agencies which serve the community and contribute directly to its progress.

(d) To create greater understanding between rural and urban people on the problems of each, as well as on their mutual problems.''

Lundmark testified that Albion meets the objectives of its constitution in that the organization meets monthly in order to plan its community service projects and charitable activities.

Albion's sources of income during 1985 were members' dues and community service projects which included participation in Pork Day U.S.A. and the Edwards County Fair, and the cutting, transporting, and selling of Christmas trees. Admitted into evidence was a statement of Albion's receipts and expenditures for 1985:

''I. Receipts

| | | | |
|---|---|---|---|
| Dues | | | $750 |
| Community Service Projects | | $15,870.65 | |
| Costs of Projects: | | | |
| Edwards Co. Fair | $1,266.96 | | |
| Pork Day USA | 7,475.59 | | |
| Christmas Trees | 2,077.50 | | |
| other Expenses | 1,467.11 | | |
| | $12,287.96 [*sic*] | | |
| Net Receipts on Community Service Projects | | | $3,582.69 |
| Gross Receipts | | | $4,332.69 |

II. Expenditures

| | | |
|---|---|---|
| Building Expenses | | |
| Insurance | 265.00 | |
| Repairs | 871.23 | |
| Utilities | 1,022.87 | |
| Total Building expenses | | $2,159.10 |
| National dues | | 276.00 |
| District Meetings | | 150.00 |
| National Meetings | | 424.00 |
| Total expenditures | | $3,009.10 |

III. Net Income $1,323.59

IV. Donations to Others

| | |
|---|---|
| Veterans' Memorial Arch | $1,000.00 |
| Childrens' Easter Egg Hunt | 160.97 |
| Civil Defense | 100.00 |
| City of Albion Park | 100.00 |
| Hadi Shriners | 100.00 |
| Albion Chamber of Commerce | 35.00 |
| Tri-County Pork Producers | 50.00 |
| Edwards County 4-H Trophy | 24.50 |
| Heart Association | 25.00 |
| Teacher of the Year Award | 16.00 |
| Total Donations | $1,611.47 |

V. NET INCOME FOR 1985 AFTER DONATIONS        ($287.88)"
The administrative law judge found that of the $1,611.47 contributed to other organizations, only $41 went to charitable organizations, while most of the remainder went to civic projects.

■■ The Illinois Constitution of 1970 provides in part that the "General Assembly by law may exempt from taxation only the property *** used exclusively for *** charitable purposes ***." (Ill. Const. 1970, art. IX, §6.) Section 19.7 of the Revenue Act of 1939 describes certain property exempt from taxation as:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit ***." (Ill. Rev. Stat. 1989, ch. 120, par. 500.7.)

The burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485, 488; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 279, 507 N.E.2d 1331, 1336.) The applicant must show by clear and convincing evidence (*Fairview Haven v. Department of Revenue* (1987), 153 Ill. App. 3d 763, 770, 506 N.E.2d 341, 346) that it is a charitable organization and that the property for which it seeks an exemption is exclusively used for chari-

table purposes. *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 397, 146 N.E.2d 73, 79.

In *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, the supreme court set forth guidelines for determining if property is in fact being used for charitable purposes. A charitable use exists when: (1) the use is for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens on government; (2) the charitable institution has no capital, capital stock, or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter; (3) the charitable institution dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses; (4) the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used; and (5) the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose. *Korzen*, 39 Ill. 2d at 157, 233 N.E.2d at 541-42.

As for the first of the guidelines, it must be shown that the benefits accrue to mankind directly: it is not sufficient that incidental benefits accrue to the public as a result of the property's use. (See *International College of Surgeons v. Brenza* (1956), 8 Ill. 2d 141, 133 N.E.2d 269.) We note that Albion's constitution does not include charitable donations as an objective, thus requiring us to focus our attention on Albion's activities to determine whether it is a charitable organization. (*Morton Temple Association, Inc. v. Department of Revenue* (1987), 158 Ill. App. 3d 794, 796, 511 N.E.2d 892, 893.) Albion has not shown that its monthly meetings are open to the general public, or that its property is available for use by the general public. While the organization's community projects involve interaction with the community at large, the evidence shows that these projects are nothing more than fund raisers. Furthermore, it has not been shown that Albion's activities reduce the burdens of government because there is no evidence that the government was burdened with providing revenue for the projects to which Albion donated funds.

■ Turning to the second guildeline, Albion's revenues are derived chiefly from its membership dues, and Albion's participation in the Edwards County Fair, Pork Day U.S.A., and Christmas tree sales. According to the statement of receipts and expenditures for 1985, of the $4,332.69 in gross receipts, $3,009.10 was expended for building maintenance, insurance and repairs ($2,159.10), national dues of the organization ($276), and district meetings expenses ($574). From the record we find that Albion's primary purpose is to maintain its property and pay for its monthly meetings. Although Albion donates a substantial portion of its earnings to other causes, this does not change its primary purpose of generating income to fund Albion's operations. We see Albion's community service as evidence of its contention that the primary purpose of Albion is charitable, but this evidence is insufficient under all the facts of this case. See *Salvation Army v. Department of Revenue* (1988), 170 Ill. App. 3d 336, 524 N.E.2d 628.

■ Guideline number three has likewise not been met by Albion. There is no evidence that all who need and apply for a charitable contribution from Albion are free of any obstacles in obtaining Albion's benefits. (See *Good Samaritan Home v. Department of Revenue* (1985), 130 Ill. App. 3d 1036, 474 N.E.2d 1387.) It is clear from the record that the organization does profit from the revenues it generates. For example, of the gross receipts in 1985, Albion expended approximately 70% of that money on building expenses, dues and district meetings.

It is clear from the evidence presented that Albion's charitable endeavors are incidental to its primary purpose. The fact that income is ultimately put to a charitable or donative purpose does not entitle the property to a charitable use exemption. (*Salvation Army*, 170 Ill. App. 3d at 344, 524 N.E.2d at 633.) As it is the primary purpose for which property is used, and not any incidental purpose, which determines whether a parcel qualifies for tax exemption, we conclude that Albion is not exclusively used for charitable purposes and is not entitled to exemption from real property tax. For the reasons stated herein, we reverse the circuit court's judgment and affirm the Department's decision to deny a tax exemption.

Reversed.

HARRISON and HOWERTON, JJ., concur.