THE SALVATION ARMY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 2—87—0208

Opinion filed May 19, 1988.

Stewart W. Karge, Julie A. Lepri, and Scott W. Ammarell, all of McDermott, Will & Emery, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Revenue.

Fred L. Foreman, State's Attorney, of Waukegan (Joseph E. Kolar, Assistant State's Attorney, of counsel), for appellee Lake County Board of Review.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, the Salvation Army, sought administrative review in the circuit court of Lake County of a decision by the Department of Revenue (Department) denying tax-exempt status for a parcel owned by plaintiff. The Department had determined that the parcel, operated as a thrift store, was not exempt from property taxation since the parcel was not used primarily for charitable purposes. The circuit court affirmed the Department's decision as not being against the manifest weight of the evidence. The court also denied the Salvation Army's motion for reconsideration of the court's affirmation of the Department's ruling. Additionally, the court denied Salvation Army's motion to remand the case to the Department for further testimony and evidence regarding the factual similarities between the Salvation Army Thrift Store in Waukegan and the Society of St. Vincent De Paul Thrift Store in Chicago, which was granted a tax exemption by the Department. The Salvation Army filed a timely notice of appeal.

In this court the Salvation Army contends that (1) the trial court erred in affirming the Department's decision that the Salvation Army Thrift Store is not entitled to a charitable use exemption from real property tax and (2) the trial court abused its discretion in refusing to remand this action to the Department for further hearing regarding the similarities in the uses of the Salvation Army Thrift Store and the Society of St. Vincent De Paul Thrift Store.

The Salvation Army is a Protestant Christian religious movement which, in addition to preaching the gospel, provides an array of social services to the poor, including alcoholic rehabilitation. The Salvation Army is an exempt organization under section 501(c)(3) of the Internal Revenue Code. I.R.C. §501(c)(3) (1954).

Prior to 1983 and 1984, the tax years in question, the Salvation Army operated a thrift store and Adult Rehabilitation Center (ARC) from one building located at 115 S. Sheridan Road in Waukegan. No property tax was assessed against this building. The building, however, was condemned to make way for road improvements, requiring the Salvation Army to relocate its ARC and thrift store.

Due to changes in local zoning restrictions, the Salvation Army was unable to combine the thrift store and the ARC in the same structure. A new building was constructed at 506 S. Sheridan Road in Waukegan to house the ARC. The thrift store moved to a building located on several parcels of land at 133-139 South Genesee Street. The Salvation Army purchased the property for $120,000 and spent an additional $100,000 in improvement costs before opening the thrift store in June of 1983.

The thrift store sells used clothing, furniture, glassware, and household furnishings of all kinds, donated to the Salvation Army by individuals in the community. The donated items are collected once or twice weekly and taken to the ARC for processing and grading before being sold at the store for below market value. The thrift store participates in an emergency services disaster program with other disaster relief services. In the event of a disaster, the store may be called upon to supply disaster victims with food and clothing although no such relief was required during 1983 or 1984.

Subsequent to the purchase of the Genesee Street property, the Salvation Army filed a petition with the Board of Review of Lake County (the board) for exemption from 1983 real property taxes. The petition sought tax exemption pursuant to section 19.2 of the Revenue Act of 1939, dealing with property used exclusively for religious purposes. (Ill. Rev. Stat. 1983, ch. 120, par. 500.2.) The board approved the exemption request on June 28, 1983, but on May 22, 1984, the Department of Revenue, which renders final decisions concerning tax exemption petitions (Ill. Rev. Stat. 1983, ch. 120, par. 589(6)), denied the request, finding that the primary use of the thrift store was not charitable.

The Salvation Army requested review of the Department's decision and submitted a memorandum supplemented with exhibits and an affidavit in support of its position. Following reconsideration of its decision, the Department, on August 31, 1984, again denied the exemption request, finding once more that the primary use of the thrift store was not charitable. Additionally, the Department concluded that the primary use of the property was as a "retail outlet" and that the use of the income was not controlling. The Salvation Army requested a formal hearing of the Department's decision.

On November 13, 1984, the Salvation Army submitted an application for real property tax exemption for the 1984 tax year to the Lake County board of review. This application sought tax exemption pursuant to sections 19.2 and 19.7 of the Revenue Act of 1939, the religious and charitable use provisions of the Act. (Ill. Rev. Stat. 1983, ch. 120, pars. 500.2, 500.7.) The board recommended the 1984 tax exemption, pending confirmation by the Department of Revenue.

On March 29, 1985, the Department denied the Salvation Army's 1984 tax exemption request, finding that the primary use of the property was not charitable. The Salvation Army requested review of the Department's decision, subsequently submitting a supporting memorandum and exhibits. Upon review, the Department again denied the exemption request, concluding that the primary use of the property

was not charitable.

Pursuant to an agreement between the Salvation Army and the Department, formal hearings on the 1983 and 1984 tax exemption applications were consolidated. At the consolidated hearing on August 13, 1985, four witnesses testified on behalf of the Salvation Army. Numerous exhibits were offered by the Salvation Army and the Department and accepted into evidence.

William Hasney, a lieutenant colonel with the Salvation Army who oversees the operations of 25 adult rehabilitation centers in the central United States as well as the thrift stores in that area, explained the relationship between the operation of the thrift stores and the ARCs:

> "The Thrift Stores provide a means whereby the donations in kind [donations other than cash, *e.g.*, furniture, clothing, etc.] ***, donations to the Salvation Army can be converted into cash and used as a part of our needed income."

Hasney further explained that these donations enabled the Salvation Army to finance the operations of its ARCs. Hasney stated that while the thrift stores contribute to the financial support of the ARCs, this purpose was secondary to its main purpose of providing rehabilitation for its clients through a work therapy program. When asked if the thrift stores were operated with a view to making a profit for the Salvation Army, Hasney replied:

> "Well, the total income of the store itself is needed to pay the bills for operating the store, and paying its employees, utilities, and so forth, and any other overages would go directly towards the ongoing support of the [rehabilitation] program."

Major Leonard Caldwell, who oversees the financial aspects of the ARCs, testified that the proceeds from the sales at the thrift stores go into the operating budgets of the ARCs. Caldwell stated that he prepared the income statements of the Waukegan thrift store for that part of fiscal year 1983 following the store's opening and for all of 1984. Those statements, which were admitted into evidence, showed that after deducting expenses from the gross income generated from sales at the thrift store, the Salvation Army realized a profit of $51,164.49 in fiscal year 1983, and $152,505.64 in fiscal year 1984.

Caldwell related that all ARCs and all thrift stores are treated as one entity. If the profits from a thrift store are insufficient to fund an ARC's operation, the Salvation Army redistributes any surplus funds it has acquired from the operation of another center to make up the shortage.

Captain John McCarty, the administrator of the Waukegan ARC,

explained how the thrift store is utilized in the ARC's client employment program. Some of the Waukegan ARC clients helped to sort and clean the incoming donated items, and some work at the thrift store as truck drivers for pickup and deliveries, as maintenance workers, or as store clerks. "Graduates" of the program, *i.e.*, those clients who have maintained their sobriety for 90 days or more, are often employed by the thrift stores as clerks. McCarty related that on any given day as many as eight or nine clients would be working at the thrift store for some part of the day. The store also employs individuals who are not clients to assist in the management of the store.

McCarty explained why the Salvation Army had two separate locations for the Waukegan ARC and the thrift store instead of one multipurpose building as it had prior to the relocation of the two facilities. Changes in the applicable zoning laws prevented the Salvation Army from having a multipurpose building housing a warehouse, store, and dormitory residence. Prior to relocation of the ARC and the thrift store, when the two facilities were located on the same piece of property, the thrift store had been tax exempt.

The Salvation Army's final witness, Dr. Therese Finn, an expert in rehabilitation psychology, testified that she was familiar with the rehabilitation program established by the Salvation Army. Finn stated that the Salvation Army's rehabilitation program is "comprehensive" because the Salvation Army can train people at its facilities and, thus, see them in an actual work setting before trying to place them in the community. According to Dr. Finn, the thrift store constituted a "crucial component" of the Salvation Army's rehabilitation program because the self-esteem of the clients, working in conjunction with the store, is enhanced as they see their productive efforts benefit others.

On January 13, 1986, the Department issued its final administrative decision, denying the Salvation Army's request that the parcels in issue be exempt from property tax. The Department found that although the Salvation Army is a charitable organization, the thrift store is not primarily used for charitable purposes. Rather, the property is used primarily as a retail outlet for the sale of goods donated to the Salvation Army.

On February 10, 1986, the Salvation Army filed a complaint for administrative review (Ill. Rev. Stat. 1985, ch. 110, par. 3—103), appealing the Department's decision denying the requested exemption. The circuit court of Lake County affirmed the Department's decision. Subsequently, the Salvation Army filed a motion for reconsideration, requesting not only that the trial court reconsider its ruling denying tax exemption but also that the court remand the case to the Depart-

ment for further hearing regarding the factual similarities between the Salvation Army Thrift Store and the Society of St. Vincent De Paul Thrift Store. The court denied the motion. Thereafter, on March 3, 1987, the Salvation Army appealed from the circuit court's decisions.

In Illinois, all property is subject to taxation, unless specifically exempted by statute. (*Metropolitan Sanitary District v. Rosewell* (1985), 133 Ill. App. 3d 153, 155.) However, statutes granting tax exemptions must be construed strictly in favor of taxation, and the party claiming an exemption bears the burden of proving clearly and conclusively that the property in question falls within the terms of the statute under which the exemption is claimed. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547.

In the instant case the Salvation Army claims exemption under section 19.7 of the Revenue Act of 1939, which allows exemptions only for property owned by a charitable organization and used exclusively for charitable or beneficent purposes. (Ill. Rev. Stat. 1983, ch. 120, par. 500.7.) Property satisfies this exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose, even though it is used for a secondary or incidental purpose. (*Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 329.) In deciding whether an exemption is applicable, every presumption is against the intention of the State to exempt property from taxation, and doubts concerning the applicability of the exemptions are to be resolved in favor of taxation. 155 Ill. App. 3d at 328.

Because the relevant facts in the case at bar are undisputed by the parties, the issue of whether the property here is exempt is a question of law. (*Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 423.) Thus, the decision as to whether the thrift store is exempt depends solely upon whether the property is primarily used for charitable purposes. This court's role is to determine whether the trial court properly found that the primary use of the property was not for charitable purposes, and that, therefore, the property is not entitled to tax-exempt status. 160 Ill. App. 3d at 423.

In the instant case it is undisputed that the Salvation Army is a charitable organization which owns the parcels in issue. The disputed question concerns whether the parcel, occupied by a thrift store which is owned by the Salvation Army and operated by its employees and clients, is primarily used for charitable purposes or whether it is oper-

ated with a view to profit.

The circuit court affirmed the Department's decision that the thrift store constitutes a retail outlet for the sale of goods donated to the Salvation Army and that it is not exempt because the primary purpose of the store is not charitable. The Salvation Army contends that the thrift store serves the Salvation Army's charitable and religious mission of caring for the needy by making clothing, furniture, and household goods available to needy individuals at no charge or at a nominal charge. Additionally, the Salvation Army maintains that the thrift store constitutes an integral part of the work-therapy program of the Waukegan ARC, which forms a major portion of the charitable and benevolent work of the Salvation Army. The thrift store provides clients with work-therapy assignments, which include sorting, cleaning, and refurbishing donated goods, assisting and delivering goods to the store by truck, stocking the store, and performing basic janitorial services at the store.

■ Whether the use to which certain property is put is for an exempt purpose depends upon the intention of the owners of such property when putting it to use. (*People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 371.) From June 1983, the time of its opening at its present location, through September 1984, the Waukegan Thrift Store was operated with a view to making a profit. Lieutenant Colonel William Hasney, who oversees the operations of 25 adult rehabilitation centers in the central United States, testified regarding the relationship between the operation of the thrift stores and the ARCs stating:

> "The Thrift Stores provide a means whereby the donations in kind [donations other than cash, *e.g.*, furniture, clothing, etc.] ***, donations to the Salvation Army can be converted into cash and used as a part of our needed income."

According to Hasney, these donations enable the Salvation Army to fund the operations of its ARCs. Nevertheless, Hasney maintained that the income which the thrift stores contributed to the financial support of the ARCs is secondary to its main purpose of providing rehabilitation for its clients through a work-therapy program. However, when asked if the thrift stores are operated with a view to making a profit, Hasney replied:

> "Well, the total income of the store itself is needed to pay the bills for operating the store, and paying its employees, utilities, and so forth, and any other overages would go directly towards the ongoing support of the [rehabilitation] program."

Major Leonard Caldwell, who oversees the financial aspects of the

ARCs, testified that the proceeds from the sales at the thrift store go into the operating budget of the Waukegan ARC. Also, income statements of the thrift store, which were prepared by Caldwell for part of fiscal year 1983 and all of 1984, the tax period pertinent to the question in issue, showed the Salvation Army realized a profit of more than $200,000 from sales at the thrift store. This profit, as shown by the testimony of Hasney and Caldwell, was utilized to finance the operations of the Waukegan ARC. Additionally, the affidavit of John Paton, second vice-president of the Salvation Army, stated that the net annual income from the thrift store is used to support the Waukegan ARC.

■ Based on the preceding evidence, we conclude that the primary purpose of the thrift store is to generate income to fund the Waukegan ARC. Moreover, the fact that the income is ultimately put to charitable purposes, *i.e.*, to fund the Salvation Army's rehabilitation program, does not entitle the property to a charitable use exemption, as it has long been held that the use to which property is devoted is decisive rather than the use to which the income derived from the property is employed. (*University of Illinois Foundation*, 388 Ill. at 374; *People ex rel. Graff v. Passavant Memorial Hospital* (1930), 342 Ill. 193, 196; *People ex rel. Baldwin v. Jessamine Withers Home* (1924), 312 Ill. 136, 139-41.) When money is made by the use of a building, that money constitutes profit, no matter to what purpose that money is applied. *Jessamine Withers Home*, 312 Ill. at 141.

Also, the fact that the thrift store provides a number of other incidental services that are charitable in nature, *i.e.*, work therapy for some of the ARC clients, distribution of goods to the poor for a nominal sum, social and religious referrals, and participation in the local disaster relief program, does not change its primary purpose of generating income to fund the ARC operations.

Although some ARC clients perform various work-therapy assignments at the thrift store, the testimony of Captain McCarty indicated that others work elsewhere, performing such tasks as painting, cooking, and answering the phone. Thus, the thrift store makes up only a part of the work-therapy program. Also, despite the Salvation Army's claim that prices at the thrift store are set extremely low, and, according to Captain McCarty, lower than those of the St. Vincent De Paul Thrift Store in Chicago, Major Caldwell testified that Salvation Army administrators shop stores of a similar nature to determine if the prices at the Salvation Army's thrift store are comparable.

Because the store clerks at the Salvation Army Thrift Store keep a list of Salvation Army resources and other community resources at

every cash register and are also responsible for distributing at the store the Salvation Army's religious publication, "War Cry," the Salvation Army also maintains that the thrift store plays an important part in referring individuals to other social and religious services offered by the Salvation Army or by other social service agencies. We clearly see this service of the thrift store as merely incidental and not as evidence of the fact that the primary use of the store is charitable.

■ Finally, the Salvation Army's reliance on the thrift store's participation in the local emergency disaster relief program as evidence of a charitable use of the thrift store is inappropriate. The record indicates that the Salvation Army did not participate in the disaster program during 1983 and 1984, the tax years in question. The intent to use property for charitable purposes does not warrant an exemption. (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157.) Therefore, the fact that the Salvation Army intended to provide relief to disaster victims had such a disaster occurred during 1983 or 1984 does not qualify as evidence of an actual charitable use, as required by section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 500.7), sufficient to overcome the presumption in favor of taxation.

As it is the primary purpose for which property is used and not any secondary or incidental purpose which determines whether a parcel qualifies for tax exemption (*Korzen*, 39 Ill. 2d at 157; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 279), we conclude that the thrift store is not exclusively used for charitable purposes and, therefore, is not entitled to exemption from real property tax.

Defendant also contends that the Department's decision upholding tax-exempt status for a thrift store in the Department of Revenue v. Society of St. Vincent De Paul Archdiocese of Chicago (Docket Nos. 83—16—103 through 83—16—105) (May 29, 1986)), required a remand of this case to the Department. Thus, the circuit court's refusal to consider the St. Vincent De Paul case or to remand the instant case to the Department for further hearing regarding the factual similarities of the two cases constituted an abuse of discretion.

■ First of all, as pointed out by the board, the Administrative Review Law restricts judicial review of administrative decisions to the record compiled by the agency. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) No new or additional evidence shall be heard by the court (Ill. Rev. Stat. 1985, ch. 110, par. 3—110). Since the St. Vincent De Paul case did not constitute part of the administrative record before the circuit court, the court was prohibited from considering the case.

■ Whether to remand the case at bar to the Department for further hearing was a matter within the trial court's discretion. (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(7).) Our review of the St. Vincent De Paul case reveals that the circuit court did not abuse that discretion in refusing to remand the instant case.

In St. Vincent De Paul the taxpayer was a not-for-profit organization which owned a thrift shop established as a distribution center of donated goods for the needy. Persons who obtained goods from the store were either referred to the store by various social agencies or were individuals who resided in the vicinity of the store. Needy persons could obtain goods by either paying a nominal amount, if they so desired, or by receiving the goods for no charge. The purpose of the thrift store was to provide a means for persons to donate goods for the needy, to get those goods to the needy, and to allow for a networking or centralization of these activities. No profit was generated as a result of the thrift store's activities, and, thus, generating income was not the primary goal of the thrift store. As a result, the Department determined that the property on which the St. Vincent De Paul thrift store was located was tax-exempt.

In the instant case, although the thrift store gives clothing to its clients and, in times of a disaster, may provide clothing to the victims, the store is open to the general public, selling clothing and other items to anyone wishing to purchase them. As the Department points out, the primary purpose of the store, unlike that of the store in St. Vincent De Paul, is not to redistribute donated items to the needy by matching those items with those individuals who might be in need of such items. Rather, the purpose is, as the evidence revealed, to generate income for the operation of the Waukegan ARC. Consequently, the primary uses of the thrift stores in the St. Vincent De Paul case and in the case at bar differ, and, therefore, the circuit court was justified in not remanding this case for further hearing before the Department.

Based on the above reasoning, the judgment of the circuit court of Lake County, affirming the Department's decision to deny tax-exempt status to the property in question, is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.