EVANGELICAL HOSPITALS CORPORATION, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District    No. 2—90—1436

Opinion filed December 30, 1991.—Rehearing denied February 3, 1992.

NICKELS, J., concurring in part and dissenting in part.

Robert Handley, of Moroni & Handley, of Carol Stream, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Revenue.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellee Du Page County Board of Review.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Evangelical Hospitals Corporation (EHC), a not-for-profit corporation, appeals from the judgment of the circuit court of Du Page County upholding a ruling of the Department of Revenue (Department) which denied exemption of real estate property tax on

approximately 18,000 square feet of office space for the 1988 tax year.

The sole issue on appeal is whether the Department erred in finding that the approximately 18,000 square feet was not exempt from real estate taxes for tax year 1988 pursuant to section 19.7 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1989, ch. 120, par. 500.7).

The Evangelical corporate structure is the following. The Evangelical Health Systems (EHS) is a not-for-profit corporation. It is the holding company for and maintains full control over both EHC and Evangelical Services Corporation (ESC). EHC is also a not-for-profit corporation which owns and operates health care facilities, including five hospitals. EHC's 104,800-square-foot, central office building is located at 2025 Windsor Drive in Oak Brook, Illinois. On January 1, 1988, EHC "licensed" approximately 18,000 square feet of its central office building to ESC. EHC has not made nor intended to make a profit from this licensing agreement. ESC is a for-profit corporation and does not qualify for tax-exempt status under section 501(c)(3) of the Internal Revenue Code (26 U.S.C.A. §501(c)(3) (West 1988)).

ESC had four basic functions according to Joseph Toomey, an executive vice-president of EHS and vice-president of EHC, the only witness to testify at the administrative hearing. One function was to provide management services for four of EHC's five hospitals. These services were used solely by EHC and were allotted 13,555 square feet of the approximately 18,000 square feet at issue.

A second function was to operate a pharmacy. The pharmacy sold "high tech" pharmaceutical services to both home and residential health care facilities within the Evangelical corporate system from which it made no net income and to an independent firm which served home health care companies. This firm was not connected to the Evangelical corporate system in any way and serviced its own home health care clients. In 1988, the firm purchased approximately $175,000 to $200,000 of pharmaceutical services from the pharmacy at a markup which constituted 15% to 20% of the pharmacy operating costs. Although there was no designation of space in the pharmacy for the services to the firm and to EHC, the total area allocated for the pharmacy was 2,951 square feet.

The third function of ESC was to maintain properties of the Evangelical corporate system other than the five hospitals. The properties were managed for a fee and included EHS's physician office building, "high tech" medical centers, immediate care centers and houses for elderly services. Although there was no testimony as to which, if any, of these properties were operated for charitable pur-

poses, there was evidence that most of the properties were exempt from real estate taxation but some were assessed for value. The fee charged for the real estate management only covered the costs of providing the service, and ESC did not make a profit from this service. Seven hundred and twenty square feet was allocated for this real estate management function.

Finally, ESC functioned as a holding company for one or two joint ventures between itself and physicians. The nature of these joint ventures was not described, nor was there an allocation of space used to provide for this function. No profit had come from these joint ventures.

The remaining 1,260 square feet was used as ESC corporate staff offices. There was no testimony as to the use of these offices. According to Toomey, ESC was organized to help EHS administer its charitable undertakings more efficiently. Although ESC was never intended to make profits, as a for-profit corporation, ESC could avoid some administrative requirements and lease equipment at a lower rate.

In early 1989, EHC applied to the Du Page County Board of Review (Board) seeking exemption for real estate taxes for 1988 on the entire office building. The Board approved EHC's request for exemption for the entire premises. On April 30, 1990, however, the Department adopted the administrative law judge's recommended disposition which denied exemption for the approximately 18,000 square feet used by ESC. On November 27, 1990, the circuit court affirmed the Department's decision.

EHC advances several contentions in its appeal. EHC maintains that the trial court erred by reading the statutory language from the perspective of ESC. EHC also contends that the trial court erred because ESC's use of the 18,000 square feet furthered the purpose of EHC. Further, EHC contends that the trial court erred because the corporate structure was designed to increase efficiency, and therefore, the trial court penalized EHC for being efficient. Finally, EHC contends that the Department's and the circuit court's reliance on *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, was misplaced.

Both the Department and Board contend that the 18,000 square feet was not exempt because ESC, as a lessee, was not a charitable organization pursuant to *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537. The Department also contends that, although ESC may further EHC's charitable purposes, the prop-

erty is not exempt even if ESC's profits are used to support charitable purposes.

Initially, we must address the standard of review to be applied. The Board contends that like other administrative decisions, we should not disturb the finding unless it is against the manifest weight of the evidence. (See, *e.g., Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 872, 506 N.E.2d 390.) However, when the facts are not in dispute as to whether property is exempt from taxes pursuant to section 19.7, as is the case here, the question is one of law. *Girl Scouts of Du Page County Council, Inc. v. Department of Revenue* (1989), 189 Ill. App. 3d 858, 861, 545 N.E.2d 784; *Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 583, 510 N.E.2d 564.

The main contention in this case involves the nature of ESC, a for-profit corporation, which has a "license agreement" for the 18,000 square feet in question with EHC, a not-for-profit corporation. The Department and Board argue that the property is not exempt from real estate taxes because ESC, as a lessee, is not a charitable organization. The Department and Board assert that ESC does not meet the criteria of a charitable organization, as defined in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537. ESC contends that its status as a charitable organization is immaterial.

Section 19 of the Act (Ill. Rev. Stat. 1987, ch. 120, par. 500) provides that "[a]ll property described in Sections 19.1 through 19.23—1, to the extent therein limited, is exempt from taxation." Section 19.7 exempts "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States *** when such property is actually and exclusively used for such charitable and beneficent purposes, and not leased or otherwise used with a view to profit." Ill. Rev. Stat. 1987, ch. 120, par. 500.7.

■■ ■ To qualify for property tax exemption under section 19.7, the property must be owned by a charitable organization and used exclusively for charitable purposes. (*Milward v. Paschen* (1959), 16 Ill. 2d 302, 310-11, 157 N.E.2d 1; *Weslin*, 157 Ill. App. 3d at 584, 510 N.E.2d at 567.) Thus, the test is two-pronged: (1) ownership and (2) use. (*Weslin*, 157 Ill. App. 3d at 584, 510 N.E.2d at 567.) Our supreme court has said distinctive attributes of a charitable organization are that (1) the organization's benefits which in some way reduce the burdens of government are for an indefinite number of persons; (2) the organization has no capital, capital stock or shareholders and does not earn profits or dividends; (3) the organization derives its funds pri-

marily from private and public charity and the funds are held for the objection and purposes expressed in its charter; (4) charity is dispensed to all who need and apply for it; (5) no obstacles seem to be placed in the way of those seeking benefits; and (6) the primary use of its property is for charitable purposes. (*Korzen*, 39 Ill. 2d at 157, 233 N.E.2d at 541-42.) The phrase "used exclusively for charitable purposes" means the *primary* purpose for which the property is used. *Korzen*, 39 Ill. 2d at 157, 233 N.E.2d at 541-42.

In this case, the Department and Board do not argue that EHC leased the property to ESC with a view of profit. (*Cf. People ex rel. Hesterman v. North Central College* (1929), 336 Ill. 263, 266, 168 N.E. 269 (merely leasing does not destroy exemption; rather, property must be leased with a view to profit).) Further, the parties do not dispute that the owner of the property, EHC, is a charitable organization, and therefore, the first prong of the test is met.

However, the Department and Board contend that ESC, as lessee, must also be a charitable organization. The Department and Board argue that to be exempt under section 19.7 the property must be both owned and used by a charity. The Department's and Board's understanding of section 19.7 would essentially engraft another requirement to the test, namely that the property must be used by a charitable organization. We do not believe that section 19.7 requires that the property must be used by a charitable organization.

In construing a statute, a court's task is to ascertain and effectuate the intent of the legislature and that inquiry begins with the language of the statute. (*Weingart v. Department of Labor* (1988), 122 Ill. 2d 1, 7, 521 N.E.2d 913.) If the language is clear, the court must give it effect without looking to extrinsic aids for construction. *Weingart*, 122 Ill. 2d at 7, 521 N.E.2d at 916.

█ Section 19.7 exempts "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States *** when such property is actually and exclusively used for such charitable or beneficent purposes." (Ill. Rev. Stat. 1987, ch. 120, par. 500.7.) The clear language of the statute only requires ownership of the property by a charitable organization and use of the property for charitable purposes. It does not require that the property be used by a charitable organization.

We must now decide whether the approximately 18,000 square feet was primarily used for charitable purposes. This determination depends on the four uses conducted on the property.

■ A party claiming an exemption has the burden of proving by clear and convincing evidence that the property in question falls within the terms of the exemption statute. (*Girl Scouts*, 189 Ill. App. 3d at 861, 545 N.E.2d at 786-87; see also *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462, 264 N.E.2d 4.) In determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. (*Korzen*, 39 Ill. 2d at 155, 233 N.E.2d at 540-41.) When the property as a whole, or in unidentifiable portions, is used both for an exempt purpose and a nonexempt purpose, the property will be wholly exempt only if the exempt use is primary and the nonexempt use is incidental. *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 66, 273 N.E.2d 371.

■ In this case, the property is used in the four ways noted previously. The majority of the property, 13,555 square feet, is used to provide management and administrative services for EHC. In *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 443, 465 N.E.2d 986, this court held that administrative offices used to support charitable or beneficent purposes may be exempt from real property taxes, pursuant to section 19.7. The 13,555 square feet is used for administrative services to support the charitable hospitals of EHC and as such is exempt from property taxation.

The Department contends, however, that this case is analogous to *Salvation Army v. Department of Revenue* (1988), 170 Ill. App. 3d 336, 524 N.E.2d 628, in which we held that a thrift shop operated in a separate building which made profits that were subsequently used to fund charitable activities at other locations was not exempt from property taxation under section 19.7. (170 Ill. App. 3d at 344-45, 524 N.E.2d at 634.) *Salvation Army* is distinguishable because in that case the thrift shop was operating solely as a store to make profits which in turn were used to reduce the costs of a charitable organization. In short, the property was used as a store. Here, the 13,555 square feet was being used only as administrative services to operate a charitable organization.

Thus, the 13,555 square feet was exempt from property taxation. However, the remainder of the property at issue which includes the pharmacy, the ESC corporate staff office, and the real estate management offices was not exempt from taxation.

As to the 2,951 square feet used for the pharmacy, there was no evidence establishing what portion was used for sales to third parties at a markup and what portion was used to sell to its own health care facilities. Arguably the function of ESC to sell pharmaceuticals to its

own health care facilities supports charitable purposes. However, when ESC sold pharmaceuticals to an independent firm at a markup it was clearly not supporting charitable purposes. The 2,951 square feet used for pharmacy operations will only be exempt if the primary use is exempt and the nonexempt use is incidental. The testimony does not clearly and convincingly prove that the pharmaceutical sales to its own health care providers were the primary use of the pharmacy space and the sales of pharmaceuticals to an outside firm at a markup were incidental. The sales to the outside firm which constituted 15% to 20% of the pharmacy's operating costs cannot be classified as incidental. Because EHC has not shown that the nonexempt portion of the pharmacy is incidental to its exempt purpose and has failed to allocate space to these separate purposes, the entire 2,951 square feet is nonexempt. *Cf. Illinois Institute of Technology*, 49 Ill. 2d at 66, 273 N.E.2d at 375.

The remaining space of 1,260 square feet designated as ESC corporate staff offices and 720 square feet designated as ESC real estate management offices was also not exempt because there was no testimony that the functions involved were for the charitable activities of EHC.

In conclusion, the 13,555 square feet used for administrative services to support the charitable purposes of EHC was exempt from property taxation pursuant to section 19.7. However, the 4,931 square feet used for the pharmacy, ESC corporate staff offices and real estate management offices was not exempt.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

BOWMAN, J., concurs.

JUSTICE NICKELS, concurring in part and dissenting in part:

I concur in the majority's finding that the space leased to ESC and used by ESC to provide management and administrative services for EHC's hospitals was used primarily and, therefore, "exclusively for charitable purposes." (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157.) However, I am unable to accept the analysis of the majority, which dissects each of ESC's incremental uses of space totalling less than 5% of EHC's total facility, and further disagree with its conclusion that certain portions of that limited space were used by ESC for noncharitable functions. I would reverse com-

pletely the decision of the Department of Revenue and the circuit court of Du Page County and, therefore, respectfully dissent from the portion of the majority opinion that holds that 4,931 square feet of EHC's 104,800 square-foot office facility is not exempt from real property taxes.

The majority found that there was no evidence that space used by two of ESC's four functions, its corporate staff offices and its real estate management offices, was related to EHC's charitable purpose. However, administrative offices used to support charitable or beneficent purposes may be exempt from real property taxes. (*Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 443.) Common sense would dictate that such administrative services cannot be provided without staff, and such staff requires office space. Therefore, I would hold that the 1,260 square feet designated as ESC corporate staff offices was exempt. So, too, the ESC's management of properties, the majority of which were themselves tax exempt and which belonged to its and EHC's not-for-profit parent corporation, was in the nature of a necessary administrative service, and I would hold that the 720 square feet of space occupied by such property management offices was exempt.

The third function of ESC that the majority found to be for a nonexempt purpose was the operation of its pharmacy, which occupied 2,951 square feet. If a property is used primarily for an exempted purpose, an incidental or secondary use for another purpose will not destroy the exemption. (*Korzen*, 39 Ill. 2d at 157; *People ex rel. Baldwin v. Jessamine Withers Home* (1924), 312 Ill. 136, 139; *Highland Park Women's Club v. Department of Revenue* (1990), 206 Ill. App. 3d 447, 464-65.) However, if an unidentifiable portion of the property is used for nonexempt purposes that are not incidental or secondary, the property will not be held exempt. *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 66.

The majority acknowledges that evidence was presented that only 15% to 20% of ESC's pharmacy sales were for profit and that the remaining sales were for a charitable purpose. Thus, I would find both that the space occupied by the nonexempt portion of ESC's pharmacy sales was identifiable as at most 590 square feet of space and that such use relative to either ESC's 18,000 square feet of space or, more accurately, EHC's 104,800 square feet of space, was both secondary and incidental.