ALIVIO MEDICAL CENTER, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—97—3456

Opinion filed September 30, 1998.—Rehearing denied November 12, 1998.

Schwartz & Freeman, of Chicago (Mary-Ann Wilson and Jacob J. Meister, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Patrick W. Carlson, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Alivio Medical Center, filed a real estate tax exemption complaint with the Board of Appeals of Cook County and an application for property tax exemption for the year 1993 with the Illinois Department of Revenue (Department), which denied the application. Plaintiff requested a formal hearing, which was held before an administrative law judge (ALJ). After the hearing, the Department issued a denial. Plaintiff then filed a complaint for administrative review in the circuit court of Cook County, which affirmed the Department's decision.

The sole question presented for review is whether or not plaintiff's property is exempt from taxation under our constitution and the applicable statute.

Alivio Medical Center, a comprehensive ambulatory medical care facility, was incorporated on March 21, 1988, under the General-Not-For-Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 1996)). Alivio has no capital stock or shareholders and has 17 uncompensated members on its board of directors. Alivio's bylaws state its purpose is to: (a) increase Hispanic access to comprehensive, affordable quality health care through the availability of bilingual and bicultural personnel; (b) increase the Hispanic community's knowledge and understanding of wellness and factors leading to ill health; (c) promote effective communication between Hispanic consumers and health providers; and (d) increase the representation of Hispanics in health care professions at all levels. Alivio's services are available to anyone regardless of color, race, national origin, religion or gender.

Prior to Alivio's ownership of the property, the property was granted exemption from real estate property taxation based upon its ownership by Mercy Hospital. Alivio is exempt from federal income tax payment pursuant to a section 501(c)(3) (26 U.S.C.A. § 501(c)(3) (West Supp. 1998)) designation from the Internal Revenue Service.

Alivio's fiscal year ends on June 30. For the period from July 1, 1992, to June 30, 1993, Alivio's operating revenue was $1,855,673. Of this revenue, 59% was garnered from patient fees, 25% from contributions, 15% from federal grant income, and 1% from other sources. Of the patient fees, 78% came from Medicaid reimbursement, 15% came from patient collections, 5% came from third party reimbursement and 2% came from Medicare reimbursement. Alivio's operating expenses for that period were $1,717,417.

In 1993, Alivio employed 3.5 physicians. This included a pediatrician, an internist, a family practitioner.and a part-time obstetrician. Alivio also employed a full-time nurse and a number of midwives. Alivio's staff physicians were not allowed to engage in any competitive

private practice but were allowed to work at another clinic or hospital as well as Alivio's medical center. Alivio's director was paid $84,249 that year and its staff physicians received salaries ranging from $70,000 to $90,000 that year, depending on their experience.

Alivio has an established policy for billing. All new patients are referred to the financial evaluator for assessment of their capabilities to pay. The required payments for patients expressing financial need are based upon the poverty guidelines promulgated in the Federal Register. This evaluation is done on the first visit and six months thereafter.

Alivio initially charges a patient the same amount regardless of the patient's financial classification. The bill then proceeds to the financial officer, where it is adjusted to the appropriate financial category. Alivio has two categories of payment: self-payment and Medicaid. Only self-pay patients are referred to the sliding scale, evaluation. Alivio files its Medicaid claims on a fee-for-service basis, and Medicaid patients who lose their eligibility are referred to the financial evaluator for the sliding scale evaluation.

Alivio bills its patients on the day of the visit. If the patient cannot pay on that day, a statement of account is mailed the next business day and remailed at three 30-day intervals until the bill is paid in full. After 180 days, the unpaid portion of the account is written off following the recommendation of the patient account coordinator and after the approval of the director of finance and the executive director. Alivio requests payment during any patient visits within that 180-day period. Alivio has no fee-waiver policy but Alivio estimates approximately 25% of its bills are written off. Patients with outstanding balances are still eligible to receive medical treatment.

On October 30, 1995, the ALJ recommended that Alivio be denied the real estate property tax exemption. This recommendation was based on the determination that Alivio was not a charitable organization. Specifically, the ALJ determined that Alivio made a profit in 1993, did not dispense charity to all that needed or applied for it, placed obstacles in the way of those seeking benefits, and the organization's primary use of the property was not for charitable purposes, all in contravention of the criteria established by the Illinois Supreme Court.

On November 1, 1995, the Department's Director, Kenneth E. Zehnder, accepted the ALJ's recommendation and denied Alivio the exemption. On December 19, 1995, Alivio filed a complaint for administrative review in the circuit court.

At the circuit court proceedings, Alivio sought reversal of the Department's decision, asserting that it did not make a profit and did

not place obstacles in the way of those seeking charity. The circuit court affirmed the Department's decision, holding that Alivio failed to prove it "primarily" used its property for charitable purposes. The court specifically looked to Alivio's bylaws and determined that Alivio's policy of writing off bad debts was not the same as "dispensing charity." The court also noted that there was no evidence the public was aware of any charitable care.

Alivio asserts that the property owned and operated by it is entitled to an exemption from real estate taxes for the 1993 assessment year under article IX, section 6, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 6) and section 15—65 of the Property Tax Code (the Code) (35 ILCS 200/15—65 (West 1996)). The Department argues that Alivio does not qualify as a charitable organization and, as such, is not entitled to a real estate tax exemption for 1993.

■ When facts are not in dispute as to whether property is exempt from real estate tax under a provision of the Code dealing with charitable and not-for-profit organizations, the question is one of law. *Evangelical Hospitals Corp. v. Department of Revenue*, 223 Ill. App. 3d 225, 229, 584 N.E.2d 1004, 1006-07 (1991). Then, the decision as to whether property is exempt depends solely upon the application of the appropriate legal standard to the undisputed facts. *Institute of Gas Technology v. Department of Revenue*, 289 Ill. App. 3d 779, 782, 683 N.E.2d 484, 487 (1997). To qualify property for the charitable real property tax exemption, the property must have a charitable use and must be owned by a charitable organization. *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 270, 664 N.E.2d 52, 56 (1996). Statutes providing exemption from taxation must be strictly construed. *Small v. Pangle*, 60 Ill. 2d 510, 514, 328 N.E.2d 285, 287 (1975). Incidental acts of charity by an organization will not be enough to establish that organization as charitable; the use of its property must be exclusively for charitable purposes. *Morton Temple Ass'n v. Department of Revenue*, 158 Ill. App. 3d 794, 796, 511 N.E.2d 892, 894 (1987).

■ To qualify for the charitable exemption from taxation, use of property must satisfy the criteria set out in *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 233 N.E.2d 537 (1968): (1) the use was for the benefit of an indefinite number of persons, persuading them to educational or religious conviction, for their general welfare or in some way reducing the burdens of government; (2) the charitable institution must have no capital, capital stock or shareholders, earn no profits or dividends; (3) the institution must dispense charity to all who need and apply for it, not provide gain or profit in a private sense to any person connected with it, and not appear to place obstacles of

any character in the way of those who need and would avail themselves of the charitable benefits it dispenses; (4) the institution has the burden of proving that its property actually and factually is so used; and (5) the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose.

■ Based upon consideration of the record and the foregoing legal principles, this court concludes that Alivio Medical Center does not qualify for a charitable exemption because it does not meet several of the criteria outlined in *Methodist Old Peoples Home.*

Alivio does not waive fees for any of its clients, regardless of their inability to pay; it does assess the fee on a sliding scale for clients who cannot pay the full cost of medical care. However, this would appear to place obstacles in the way of those seeking the benefits. A hospital that treats all of its patients alike, charges no fee where the patient is unable to pay, charges a graduated fee according to ability to pay but in no case makes a profit, is open to all without distinction as to race, religion or color, and is maintained by voluntary contributions of charitably inclined persons is exempt from taxation. *German Hospital v. Board of Review,* 233 Ill. 246, 84 N.E. 215 (1908).

Alivio made a net profit of $138,256 for the period ending June 30, 1993. Clearly, there was profit from this enterprise, and according to the standard set in *German Hospital,* a charitable hospital does not make a profit. Thus, Alivio does not meet this standard. Even if one accepts Alivio's argument that profit when considered for a charitable organization is determined by whether there is inurement of benefit to a private individual, Alivio has still not proven that its use of the property was primarily charitable in 1993.

Alivio does not waive fees; its primary purpose is to improve health care in the Hispanic community; all new patients are referred to the financial evaluator for assessment of their capabilities to pay; for billing and collection purposes Alivio charges the same amount regardless of the patient's financial classification, then the bill is adjusted upon determination of the patient's financial category; charges are collected on the day of visit from self-pay and sliding-scale patients and if the patient does not have the money, a statement of account is mailed the next day. For patients whose accounts remain unpaid for more than 180 days and after collection efforts have been made, the account is written off following the recommendation of the patient account coordination and after approval by the director of finance and executive director; and during patient visits, payment of charges is requested, although no patient is turned away because of a past due bill. Of Alivio's income, 59% comes from patient fees including Medicaid, Medicare, and other third-party payment plans, and direct

patient collections. Alivio does not advertise in any of its brochures that it provides charity care, nor does it post signs stating that it provides such care. None of this evidence demonstrates that Alivio's use of the property was primarily charitable.

Alivio argues that it wrote off as bad debt about 20% to 25% of its billings, and this percentage of patients was considered as charitable. However, writing off a bad debt is not tantamount to providing charity. These were amounts that Alivio was unable to collect, not charity.

Based upon the foregoing, Alivio is not a charitable organization, and the use of the property was not charitable in 1993.

Affirmed.

McNAMARA, J., concurs.

JUSTICE WOLFSON, dissenting:

I believe the property was used primarily for charitable purposes. The record shows:

1. As recognized by the federal government for income tax purposes, this is a non-profit corporation. Whatever income there is and charitable contributions go back to the medical center to further its operations;

2. The non-profit corporation does not have any stock or any shareholders;

3. The medical center's board is uncompensated;

4. Physician and staff salaries are at or below market rates;

5. The goal of the medical center is to improve health care in the underserved Hispanic community, in my view a charitable purpose;

6. While patients are billed monthly up to three times, no one ever is turned away for inability to pay. When bills are unpaid they are written off. There are no attempts to collect these bills. Patients are told when they first come in that they will be charged only what they could afford. If a patient is below a certain income, he or she receives no bill;

7. While the medical center could have done a better job of advertising its billing policies, it always conducted its activities in a way consistent with its bylaws and articles of incorporation: "Exclusively for charitable, educational, and scientific purposes";

8. The medical center relies to some substantial extent on charitable contributions; and

9. This medical center, because it treats anyone who requires treatment, lessens the burden on government and on taxpayers to an extent beyond whatever real estate taxes might be collected.

In short, Alivio is providing low- or no-cost medical care to people who need it. The fact that Alivio does not advertise its write-off policy is not a strong enough fact to offset the medical center's charitable status. At any rate, the failure to advertise does not add up to an obstacle placed in the way of those seeking treatment.

The facts in this case are more persuasive than those in *Lutheran General Health Care System v. Department of Revenue*, 231 Ill. App. 3d 652, 595 N.E.2d 1214 (1992), where we held the medical provider was entitled to an exemption from real estate taxes. There, too, the provider charged fees, although it received some charitable contributions. Staff people received salaries. No one made a profit. Revenue was plowed back into the operation. If patients could not pay, fees were waived. Most importantly, as is true in this case, no one was turned away for inability to pay or for failure to pay prior fees.

For these reasons, I respectfully dissent.