LENA COMMUNITY TRUST FUND, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants (The Board of Review of Stephenson County *et al.*, Defendants).

Second District   No. 2—00—0487

Opinion filed June 13, 2001.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellants.

Robert E. Eden, of Freeport, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Lena Community Trust Fund, Inc. (the Trust), filed this administrative review action after defendants the Department of Revenue and Director Glen L. Bower (collectively, the Department) adopted the recommendation of an administrative law judge (ALJ) denying a 1995 property tax exemption for certain real property owned and operated by the Trust. The circuit court reversed the Department's decision, from which the Department appeals, arguing that the Trust is not entitled to a charitable exemption.

The ALJ's findings of fact, adopted by the Department, are not in dispute. The Trust was incorporated in Illinois in 1991 under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 1998)). The articles of incorporation provided that the Trust was organized to collect and distribute money for charitable purposes, to assist charitable organizations in the local community, and to manage a community center used for public purposes. The bylaws provided that the trustees shall consist of members of certain organizations from Lena, Illinois. The Trust had no capital, capital stock, or shareholders. The Trust was exempt from federal income taxes under section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3) (1994)).

In March 1993, the Trust was gifted 2.69 acres of land in rural Lena, population approximately 3,000. Thereafter, the Trust built a

two-story building on the property to be used as a community center. The lower level consisted of a large meeting hall and five small meeting rooms. The upper level consisted of a large main hall and a kitchen. In 1995, the Trust opened the property as a community center and offered space to community organizations for meetings and functions. The Trust charged various fees for the space, ranging from $5 per day for the use of the small, lower-level meeting rooms by nonprofit groups to $350 per day for the use of the upper-level main hall and kitchen.

In addition to organizational meetings for the Trust, in 1995, the community center was used by the following groups: Viking Insurance, Illinois Department of Transportation, Lena Special Housing, Jaycees, an investment club, a sorority, Stephenson County Highway Department, Stephenson County Bar Association, Lena Business and Professional Association, Lions Club, and the Citizens State Bank. In addition to these meetings, Bible studies were held, as were the local high school prom and fire department dance. The center was also used for the "turkey chasers," which were not explained in the record, and by private families for anniversaries and weddings.

In 1995, the Trust collected 81% of its revenues from donations and 19% from rental fees. The Trust policy was to waive rental fees for individuals and organizations unable to pay, although no one had made such a request. In addition, no one requesting to use the center in 1995 was denied.

The Trust applied for a charitable exemption from real estate taxes for 1995. The ALJ found that the Trust did not qualify as an institution of public charity because the Trust charged fees for the use of the community center. The ALJ also found that the Trust failed to establish that the property was used exclusively for charitable purposes. The ALJ concluded that the evidence suggested that the community center had been used primarily for business meetings and private social events. The Department adopted the ALJ's recommendation that the property be denied a charitable exemption. The Trust appealed the Department's decision to the circuit court of Stephenson County, which reversed the Department's decision and declared that the property was exempt from real estate taxes for 1995. We affirm the circuit court's decision.

■ At the outset, we must determine the appropriate standard of review. Both parties acknowledge that our supreme court has held that the "clearly erroneous" standard, falling between the *de novo* and manifest weight standards, is often applied in administrative review cases on appeal where the facts are undisputed. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Under the "clearly erroneous" standard, which involves a mixed ques-

tion of law and fact, we must accept the administrative agency's findings unless we are firmly convinced that a mistake has been made. *Friends of Israel Defense Forces v. Department of Revenue*, 315 Ill. App. 3d 298, 303 (2000).

In a recent administrative review case, the Appellate Court, First District, noted a conflict in recent appellate decisions regarding the standard of review where the only question is the legal conclusion to be drawn from the facts. *Friends of Israel*, 315 Ill. App. 3d at 302. The First District noted that, in *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207 (1999), the Appellate Court, Fourth District, followed the holding in *Belvidere* and applied the "clearly erroneous" standard to an administrative review case.

Although the *Friends of Israel* court noted that our supreme court recently held that the issue of whether property is exempt from taxation was a question of law (*Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 271 (1996)), the court nevertheless applied the "clearly erroneous" standard to a question concerning an exemption from use taxation. *Friends of Israel*, 315 Ill. App. 3d at 303. The *Friends of Israel* court also noted that our court held in *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 57 (1998), that *de novo* review is appropriate where the only question is the legal conclusion to be drawn from the facts.

We reject the analysis set forth in *Friends of Israel* and choose to follow our supreme court's holding in *Chicago Patrolmen's Ass'n*. Although our supreme court discussed in *Belvidere* how the "clearly erroneous" standard might apply in administrative review cases generally, it did not specifically discuss the application of the "clearly erroneous" standard to property tax exemption cases. The question of the standard of review for property tax exemption cases was clearly decided by our supreme court in *Chicago Patrolmen's Ass'n*, which has not been overruled. As such, it is still good law, notwithstanding the decisions in *Friends of Israel* and *XL Disposal*. Therefore, consistent with *Chicago Patrolmen's Ass'n* and *Richard's Tire*, we will apply the *de novo* standard of review to this case.

■ Charitable ownership and charitable use together entitle a parcel to exemption. *Institute of Gas Technology v. Department of Revenue*, 289 Ill. App. 3d 779, 783 (1997). Section 15—65 of the Property Tax Code provides as follows:

"All property of the following is exempt when actually and exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit:

(a) Institutions of public charity." 35 ILCS 200/15—65 (West 1998).

■ The party claiming a tax exemption must prove clearly and convincingly that the property falls within the terms of the exception. *Evangelical Hospitals Corp. v. Department of Revenue*, 223 Ill. App. 3d 225, 231 (1991). All facts are to be construed in favor of taxation. *Evangelical Hospitals Corp.*, 223 Ill. App. 3d at 231.

In applying section 15—65 of the Property Tax Code to the present case, three questions emerge: (1) Was the Trust an institution of public charity? (2) Was the community center used for charitable or beneficent purposes? and (3) If the community center was used for charitable or beneficent purposes, was it used exclusively for those purposes? On appeal, the Department has disputed all three components.

■ Our supreme court in *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 157 (1968), set forth general guidelines for determining when a party is deemed an institution of public charity: (1) the institution has no capital, capital stock, or shareholders; (2) the institution earns no profits or dividends and derives its funds mainly from public and private charity and holds them in trust for the purposes expressed in its charter; and (3) the institution dispenses charity to all who need and apply for it and does not place obstacles in the way of those who would avail themselves of the charitable benefits. The *Korzen* factors are not rigid, and the court must balance the guidelines by examining the facts of each case and focusing on whether the institution serves the public and lessens the State's burden. *Randolph Street Gallery v. Zehnder*, 315 Ill. App. 3d 1060, 1065 (2000).

■ The ALJ found, and the Department argues on appeal, that the Trust did not meet the definition of public charity because the Trust placed obstacles in the way of those seeking to use the community center by charging fees for the space. The ALJ found, however, that the Trust met several of the *Korzen* criteria, namely, the following: the Trust had no capital stock or shareholders, the Trust earned no profits or dividends, the Trust's funds came from charitable donations, the Trust did not provide any gain to anyone associated with the Trust, and the Trust placed no limits on who may use the community center. On appeal, the Department does not dispute any of these findings but, rather, with respect to the issue of whether the Trust is deemed an institution of public charity, the Department focuses on the fact that the Trust charged "not insignificant fees" for the use of the community center and further argues that the Trust did not prove that it dispensed charity to all who needed it.

We disagree that the Trust placed obstacles in the way of those seeking to use the community center by charging fees. In general, charging fees does not suggest that an organization is not a public

charity. See *Small v. Pangle*, 60 Ill. 2d 510, 517 (1975); *Resurrection Lutheran Church v. Department of Revenue*, 212 Ill. App. 3d 964, 971 (1991); *Randolph Street Gallery*, 315 Ill. App. 3d at 1067; *Vermilion County Museum Society v. Department of Revenue*, 273 Ill. App. 3d 675, 679 (1995). The dispositive issue is not the existence of a fee but, rather, whether the institution makes a profit and/or the fees comprise a significant amount of the institution's operating expenses. In this case, it is clear from the evidence in the record that the Trust did not make a profit and, indeed, was operating at a loss in 1995. Moreover, it is clear that a majority of its operating costs were derived from charitable donations, including the land on which the community center sat. We see no reason to analyze whether the $5 fee for the small room or the $350 fee for the large room and kitchen was appropriate. Rather, we are persuaded that the charitable character of the Trust was exemplified by the existence of the fee-waiver policy.

The Department notes that, although the Trust's policy provided that it could waive fees for those who could not pay, no such waiver occurred in 1995. The Department is apparently unmoved by the testimony at the hearing that no such request had been made in 1995 and that no one had been denied access to the community center. The Department complains that there was no evidence to suggest that the general public was made aware of the possibility of fee waivers. The Trust counters that in a small town such as Lena, with a population under 3,000, information travels by word-of-mouth, eliminating the need to divert funds to advertise the fee-waiver policy.

We are persuaded that the evidence that no request to use the community center was ever denied is sufficient proof that the Trust did not place obstacles in the way of those who would avail themselves of the center. We can find no case law, and the Department does not point to any, suggesting that the failure to advertise a fee-waiver policy is fatal to the institution's status as a public charity. Rather, we are mindful of the fact that the factors set forth in *Korzen* are not rigid and that the facts of each case should be examined. We agree with the Trust that disseminating published material in a town with a population of less than 3,000 may not be useful and might in fact be a wasteful use of Trust funds. Therefore, we hold that the absence of evidence indicating that the Trust published its fee-waiver policy is not dispositive in this case and that the Trust has set forth sufficient evidence that it qualifies as an institution of public charity.

The Department next argues that the community center was not exclusively used for charitable or beneficent purposes. The Department argues that there is no evidence that the organizations using the community center were engaged in charitable activities and that the

private and business uses of the community center render the community center not exempt. The Trust counters that it provided for the community a valuable service that is charitable, loosely defined.

The *Korzen* court held that whether the primary use of the property was for charitable purposes was a factor in examining whether a tax exemption was appropriate. *Korzen*, 39 Ill. 2d at 157. Indeed, as noted above, section 15—65 of the Property Tax Code mandates that exempt property must be exclusively used for charitable purposes. Consistent with the holding in *Korzen*, the requirement of exclusive use has been determined to mean that the property must be used primarily for charitable activities. *Evangelical Hospitals Corp.*, 223 Ill. App. 3d at 231.

There is no comprehensive way to define charitable activity. The court in *Randolph Street Gallery* undertook to explain why a public forum for art and art education had a charitable purpose so as to qualify for an exemption:

> " 'A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens [burdens] of government.' " *Randolph Street Gallery*, 315 Ill. App. 3d at 1068-69, quoting *Crerar v. Williams*, 145 Ill. 625, 643 (1893).

In *Friends of Israel*, the court considered whether certain funds raised by the plaintiff would be subject to use taxation. The plaintiff raised funds to support Israeli soldiers and their families by providing housing, restaurants, and recreation. Certain recreation centers in Israel that were underwritten by the plaintiff's funds also served as temporary housing for Russian and Ethiopian immigrants and for American soldiers during the Gulf War. In determining that the plaintiff was organized for charitable purposes and engaged in charitable activities, the court relied upon the fact that the plaintiff provided for many needs of an indefinite number of persons. *Friends of Israel*, 315 Ill. App. 3d at 305. The court also cited to the Illinois Administrative Code, which provides that "a charitable purpose may refer to almost anything which promotes the well-being of society." 86 Ill. Adm. Code § 130.2005(i)(2) (1996).

As with *Friends of Israel* and *Randolph Street Gallery*, we are persuaded that the Trust operates the community center for charitable purposes. We disagree with the Department's suggestion that social events cannot constitute charity. Indeed, the availability of space where

members of the community can meet provides a valuable service and most certainly promotes society's well-being. We do not believe that each and every event must be open to the public in order to benefit society. For instance, uplifting morale among high school students and fire department members through hosting their dances is a worthwhile endeavor for the Trust to undertake in promoting the welfare of the Lena community. We believe that the spirit of charity is exemplified not by focusing on who might be excluded from a given event but, rather, by acknowledging that the community center is available for any community group to take advantage of, even if the group might not be able to pay the fees. See generally *People ex rel. Hellyer v. Morton*, 373 Ill. 72, 78 (1940); *Decatur Sports Foundation v. Department of Revenue*, 177 Ill. App. 3d 696, 706 (1988); *Highland Park Women's Club v. Department of Revenue*, 206 Ill. App. 3d 447, 464 (1990). We also note that the Trust's use of the center for its own organizational meetings is a proper charitable use appropriate for an exemption. See *Evangelical Hospitals Corp.*, 223 Ill. App. 3d at 231.

Although the community center was also used for business purposes, we believe that these events were incidental to its primary use as a community resource. Our analysis might change if there were evidence in the record that the Trust gave priority to business uses over civic groups and community events in allocating the space or if there were indications that the Trust had profited from the business uses. In this case, we see nothing wrong with the Trust collecting additional funds to offset maintenance expenses by permitting businesses to use available space. We believe that permitting the exemption in this case will lessen the hardship on organizations that seek to improve the quality of life of its community members.

For the foregoing reasons, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BOWMAN, J., concur.