MASON DISTRICT HOSPITAL, Plaintiff-Appellee, *v.* KATHRYN J. TUTTLE, County Treasurer and Ex-officio Collector for the County of Mason, Defendant-Appellant.

Fourth District   No. 14684

Opinion filed May 12, 1978.

Knuppel, Grosboll, Becker & Tice, of Havana (Eldon H. Becker, of counsel), for appellant.

Mitchell and Perbix, of Havana (James L. Perbix, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

The question confronting us here: Is that portion of a medical center owned by a hospital and rented to physicians for their medical practice tax exempt?

In short—no.

The Mason District Hospital in Havana (Mason County), Illinois, is a hospital that was created under the Hospital District Law (Ill. Rev. Stat. 1975, ch. 23, pars. 1251-1275) and has enjoyed an exempt status from real estate taxes since its inception. The hospital has lately constructed a one-story "medical center" with basement, on hospital land, in close proximity to the hospital itself and has entered into a license agreement with certain doctors permitting them to use the Havana Medical Center offices and facilities to perform medical services and practice medicine.

According to Jon Dosher, Mason District Hospital Administrator, Havana had been experiencing a period of decline in the number of community doctors. To combat this trend, and to attract and retain competent doctors to the area in order to insure the continued functioning of Mason District Hospital, the trustees of the hospital built the center. It was thought that the center would enable the hospital to remain a working entity. Data presented revealed that, in all areas shown, increases in hospital services rendered have occurred since the center's construction.

The center is located in a separate building adjacent to the hospital and it is composed of a ground floor and a basement of equal square footage. The basement is used as storage area for hospital records; the ground floor is used by community physicians in carrying on their private practices and medical services are rendered for which fees are charged. A license arrangement allows these physicians to use the center's facilities at a cost calculation on the basis of the square foot area occupied.

The administrator of the hospital indicated that as a condition of membership to the active medical staff of the hospital, all physicians are required to provide coverage of the emergency room of the hospital and that this is not a condition of the license agreement concerning the use of the center's facilities.

There is no question but that one-half (the basement) of the medical center is used by the hospital for storage facilities and was not assessed by the county assessor for real estate tax purposes. There are presently four doctors using the Havana Medical Center and their costs for using the building under the license agreement is $4.44 a square foot per year. By way of illustration, the license agreement shows that 2 physicians are paying $558.74 a month for the privilege of using the property in question. The cost of the medical center complex was $180,000 and was paid for from a depreciation reserve account that the hospital maintains. According to Mr. Dosher, the hospital administrator, the money was borrowed from that fund for the construction of the medical center and is currently being paid back to that fund out of the revenues received from the aforesaid license agreements. The doctors operate their medical practice on an individual basis and the hospital does not receive any revenue from the doctors' private medical practice carried on at the Havana Medical Center. The doctors operate their practices on a profit basis and do not provide care for anyone regardless of whether or not they can pay.

The Mason District Hospital filed an objection to $4,392.52 in 1975 real estate taxes assessed on such portion of this property, and paid under protest; a hearing was held before the board of review in Mason County on an objection, and the Board of Review unanimously rejected the Mason District Hospital's request for an exemption on the grounds that the medical center was for the benefit of the doctors and was not really a part of the hospital and, therefore, was not exempt. The case was then taken into the Circuit Court of Mason County and it was stipulated by the attorneys handling the case that it would be submitted to the trial court on the same evidence considered by the Board of Review. The trial judge thereafter sustained the objections of the Mason District Hospital, holding that the medical center complex owned by the Mason District Hospital was exempt from any real estate tax assessed by Mason County.

The county appeals.

We reverse.

The sole issue before us is whether the trial court erred in ruling that the real estate owned by the Mason District Hospital and upon which was located a doctors' medical clinic was exempt from real estate taxation by the county.

The correctness of the trial court's ruling must hub upon a determination of the primary use of the Medical Center. The Illinois Constitution provides that:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, §6.

And the Revenue Act exempts from taxation:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, and all property of old people's homes, *when such property is actually and exclusively used for such charitable or beneficent purposes*, and not leased or otherwise used with a view to profit; * * *." (Emphasis ours.) Ill. Rev. Stat. 1975, ch. 120, par. 500.7.

■■ Illinois courts have strictly construed statutes granting tax exemptions. The burden of proving the right to exemption is upon the party seeking it and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *People ex rel. Cannon v. Southern Illinois Hospital Corp.* (1949), 404 Ill. 66, 68, 88 N.E.2d 20, 21; *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 155, 233 N.E.2d 537, 540.

■■ Our supreme court has stated that in order for property to be exempt from taxation, it must (1) be owned by a charitable organization and (2) be "exclusively used" for charitable purposes. (*Rogers Park Post No. 108, American Legion v. Brenza* (1956), 8 Ill. 2d 286, 291, 134 N.E.2d 292, 295.) But more particularly, that court has noted that the phrase "exclusively used" refers to the *primary* purpose for which the property is used and not a secondary or incidental purpose. (*Korzen,* 39 Ill. 2d 149, 157, 233 N.E.2d 537, 542.) As the parties before us do not dispute the characterization of the Mason District Hospital as a charitable organization, the singular issue for resolution on appeal is simply: What is the primary purpose for which the Havana Medical Center is used?

Numerous cases are referred to by the hospital and the county in their briefs in support of their contentions by both analogy and distinction.

One such case is *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 137 N.E. 863. There the defendant, a Catholic bishop of Rockford, asserted that land purchased for and used as a monastery for an order of cloister nuns was exempt from taxation. The supreme court, analogizing the facts of the case to those of *People ex rel. Thompson v. First Congregational Church* (1907), 232 Ill. 158, 83 N.E. 536, and *First Congregational Church v. Board of Review* (1912), 254 Ill. 220, 98 N.E. 275, in which a church parsonage functioning as a home for a pastor was ruled not to be exempt property, held that the land in question did not qualify as tax exempt. In reaching its decision, the court noted that in determining whether property is exempt from taxation, the *primary* use would control rather than *secondary or incidental* uses. Also flagged in the opinion was the fact that in every case in which property is exempt from taxation, a direct and immediate relation to the public exists and a general public benefit results. There, however, the nuns had no relations, near *or* remote, to the public, being completely separated and secluded.

Then, in 1924, the supreme court, in *People ex rel. Pearsall v. Methodist Episcopal Church* (1924), 315 Ill. 233, 146 N.E. 165, ruled as taxable property owned by a church and used by its pastor as a residence, citing the two First Congregational Church cases justed noted.

A few years later, in *People ex rel. Graff v. Passavant Memorial Hospital* (1930), 342 Ill. 193, 173 N.E. 770, various properties (including two farms, some bonds and 400 acres of other property) were ruled not to be tax exempt. Income from these properties was used to support the charitable organization, but the supreme court recognized that application of income to a charitable purpose is not sufficient, stating:

> "To be exempt from taxation on the ground that it is devoted to charitable purposes property must be in actual use by an institution of public charity in carrying out directly its charitable purposes. Property of an institution of public charity is not exempt from taxation where it is not in actual use directly for such purposes but is leased or otherwise used with a view to profit or income from the property even though such income or profit is applied exclusively to maintain such charitable institution, as the primary use in such case is for profit and the application of the income is secondary." 342 Ill. 193, 196, 173 N.E. 770, 771.

Both parties here refer us to *International College of Surgeons v. Brenza* (1956), 8 Ill. 2d 141, 133 N.E.2d 269. There the plaintiff, a not-for-profit corporation, claimed as exempt from taxation a 4-story building purchased for use as a museum and surgeon's "hall of fame" but used during the period in question only for periodic meetings and to distribute free literature on surgical techniques and advances. The high court in review denied exempt status to the building, stating:

"The mere fact that property is held by an institution of public charity, * * *, is not sufficient to exempt it from taxation. The property itself must be devoted to charitable purposes, and it must be in actual use by the institution in carrying out directly its charitable purposes."

And,

"To be devoted to charitable purposes the property must be applied for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies of disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." *International College of Surgeons*, 8 Ill. 2d 141, 144, 133 N.E.2d 269, 271.

More recently, in *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4, the court was asked to determine whether certain property and buildings owned by the foundation were exempt from taxation. The realty complex was initially constructed by a Dr. and Mrs. Rossi, ownership of the complex being transferred to the Foundation after its formation in 1961. However, under the transfer and subsequent agreements: Rossi and his wife were the only voting members of the foundation; each was a director thereof; Dr. Rossi was president of the board of directors; and Dr. Rossi carried out his private medical practice from foundation property. The court determined that although a change in ownership and organization had occurred, Dr. Rossi retained complete control of the foundation, continued to use the facilities in the same manner as before, and derived a substantial salary from the foundation. Our court, therefore, concluded that the foundation was operated—at least in part—for the professional and financial benefit of Dr. Rossi and denied the foundation tax exempt status. The facts of the instant case clearly are unlike those in *Hopedale*.

Other decisions noted by each of the parties have denied tax exempt status to a building used by a school as a residence for the headmistress and the principal custodian of the school (*People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 145 N.E.2d 80) and to a house owned by a college and used as a residence by its president (*Knox College v. Board of Review* (1923), 308 Ill. 160, 139 N.E. 56).

■■ The county primarily argues the similarity of *Muldoon, Hopedale* and *People ex rel. Graff* to the facts of the instant case. The Hospital distinguishes those cases, as well as *People ex rel. Pearsall, International College of Surgeons* and the two *First Congregational Church* cases from the factual basis here. Certainly those cases holding a building used as a residence to be nonexempt are factually distinguishable from the instant

case. The medical center does not act as a residence for any of the doctors here. However, those cases do bring to light the principle that even where there is a binding and well-founded relationship between the charitable institution and the individual using the premises (*e.g.*, church-minister; school-headmistress), and even where the institution derives benefit from such use by that individual, the premises will not be classified as tax exempt unless the *primary purpose* for which it is used is a *charitable* one.

In *International College of Surgeons* the building in question (although owned by a charitable institution) was found not to be directly used for charitable purposes and therefore not exempt. In *People ex rel. Graff* the property was primarily used to derive a profit. Such is clearly not the case here.

■■ In the case before us, the hospital administrator stated that the medical center was constructed at a time when the number of doctors in the Havana community was decreasing to a dangerous level and there was a need to attract and retain competent medical practitioners. And it was thought that by building the center adjacent to the hospital, patients and doctors alike, as well as the hospital's financial condition, would benefit. The center is presently used as office space for physicians in the community, and these physicians make monthly monetary payments to the hospital for use of the center's facilities pursuant to a license agreement. That agreement does not require the physicians to provide medical services of any kind to the hospital as a condition upon use of the center's facilities. (It should be noted, however, that as a condition of membership to the active hospital staff, *all* doctors must provide coverage of the emergency room of the hospital, those officing at the center and those officing elsewhere.)

Although it is clear that the Havana Medical Center has succeeded—at least in part—in attracting physicians to the Havana community and its location has facilitated easy access therefrom to Mason District Hospital (thus benefiting patient, doctor and hospital alike), it appears to us that the *primary use* of the facility is as offices for the physicians privately practicing there. As such, the center's purpose (although arguably a charitable one incidentally) is primarily noncharitable.

We are required to hold that the trial court erred in granting Havana Medical Center exemption from taxation.

Reversed.

REARDON, P. J., and TRAPP, J., concur.