McCOY FORD, INC., Plaintiff-Appellee, v. THE ILLINOIS DEPARTMENT OF REVENUE et al., Defendants-Appellants.

Fourth District    No. 14731

Opinion filed June 2, 1978.—Rehearing denied June 29, 1978.

William J. Scott, Attorney General, of Chicago (Stephen R. Swofford, Assistant Attorney General, of counsel), for appellants.

William S. Hahley, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The Department of Revenue timely appeals the trial judge's written order finding that a series of transactions between McCoy Ford (dealer) and its wholly owned subsidiary McCoy Leasing (leasing company) constituted a "trade-in" under section 1 of the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440), and directing $8,855.19 paid by the dealer under protest be returned.

The facts are undisputed. The dealer and the leasing company had an unwritten understanding that the leasing company would purchase cars (Fords or other makes) only from the dealer; in return, the dealer agreed to purchase vehicles from the leasing company when the lease period expired. As a practical matter, the leasing company only purchased vehicles when there was a customer ready to lease since the leasing company carried no vehicle inventory. The frequency and number of the purchases varied with the seasonal nature of demand for leased autos. The leasing company would pay the dealer cash for the vehicle at the time of purchase. When the lease period expired, the vehicle would be immediately sold to the dealer; the dealer would pay the leasing company cash based on the vehicle's then-current "blackbook" value. The dealer would then resell the vehicle to the general public. The transactions appeared as debits to cash on the company's books.

Jim Ringle kept a list of the leasing company's vehicles repurchased by

the dealer. Between October 1974 and February 1976, Ringle caused 66 vehicles repurchased by the dealer from the leasing company for cash to be listed as trade-ins on 35 motor vehicle purchase contracts where the leasing company was purchasing a vehicle from the dealer for cash. The number of vehicles listed as trade-ins per contract varied from 1 to 4.

Although a check would be issued by the leasing company to the dealer for the *full purchase price* of the new car, the value of the listed trade-ins would be combined to reduce or completely eliminate the sales tax otherwise due on the transaction. At least 43 of the 66 vehicles had been *resold* to the general public before Ringle listed them on the dealer purchase contracts. Thus, the dealer would sell the used car "trade-in" *before* there was any "trade-in" transaction and *before* there was a sale to its wholly-owned subsidiary. Ringle's salary was paid by the dealer although the purchase contracts indicate he was representing the leasing company. The dealer-leasing company transactions were handled on a cash-only basis so that the dealer could quickly receive clear title for resale purposes. McCoy Ford has since changed the method of sales to, and repurchases from, the leasing company.

The Department of Revenue disallowed the deduction of the value of the 66 vehicles to reduce sales tax due on the 35 new car sales to the leasing company. McCoy Ford paid the additional tax found due, under protest, and brought the instant suit under section 2a of the "Payment of Public Money Into State Treasury Act" (Ill. Rev. Stat. 1975, ch. 127, par. 172) seeking return of the funds. After a bench trial, the court stated that an implied agreement as outlined above existed between the dealer and the leasing company. Although the time lag between repurchase of a vehicle by the dealer and its use as a trade-in on a later sale to the leasing company concerned the court somewhat, the court found the whole scheme of transactions intended and accomplished a trade-in for purposes of the statute. The court ordered a repayment of $8,855.19.

We agree with the trial court's conclusion that McCoy Ford intended the transactions to yield a sales tax trade-in deduction from the repurchased leasing company vehicles. However, whether the transactions do actually qualify as "trade-ins" for purposes of sales tax determination is a question of law, not intention. The Department argues that the sales to, and the repurchases from, the leasing company by the dealer were not mutually dependent since the leasing company was not under an obligation to purchase any specific number of vehicles from the dealer. The Department points out all sales and repurchases were made by check for the full amount due without reference to any trade-ins. Stressing that exemptions from taxation are to be strictly construed, the Department asks us to disallow use of the value of the 66 vehicles as trade-in deductions on the 35 new vehicle sales to the leasing company and

order the amount in controversy to be paid to the general revenue fund. McCoy argues the Department's interpretation of the statute to be "unduly rigid" and points out that the dealer is obligated to repurchase the vehicle from the leasing company regardless of condition. McCoy also asserts disallowance of the deduction would amount to a double taxation.

The relevant portions of section 1 of the Illinois Retailers' Occupation Tax Act provide:

> " 'Selling price' or the 'amount of sale' means the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, property, other than as hereinafter provided, and services, but not including the value of or credit given for traded-in tangible personal property where the item that is traded-in is of like kind and character as that which is being sold, and shall be determined without any deduction on account of the cost of the property sold, * * *.

> The phrase 'like kind and character' shall be liberally construed (including but not limited to any form of motor vehicle for any form of motor vehicle, or any kind of farm or agricultural implement for any other kind of farm or agricultural implement), * * *." Ill. Rev. Stat. 1975, ch. 120, par. 440.

Both parties agree there is no Illinois authority on exactly what constitutes a trade-in under section 1 of the Illinois Retailers' Occupation Tax Act. In making this determination, we are cognizant that the cardinal rule of statutory construction is that the intent and meaning of the legislature must be ascertained and given effect. The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. Absent statutory definition indicating a different legislative intention, courts will assume that words have their ordinary and popularly understood meanings. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 338 N.E.2d 561.) This court in *Mason District Hospital v. Tuttle* (1978), 61 Ill. App. 3d 1034, 378 N.E.2d 753, stated that Illinois courts have strictly construed statutes granting tax exemptions. The burden of proving the right to the exemption is upon the party seeking it; in determining the exemption all facts are to be construed and all debatable questions resolved in favor of taxation. See also *Heller v. Fergus Ford, Inc.* (1975), 59 Ill. 2d 576, 322 N.E.2d 441.

The Occupation Tax Act allows credit to be given against sales tax for the acquisition of tangible personal property in an otherwise taxable transaction. Here, however, acquisition was by cash alone. The cash received by the leasing company when a vehicle was sold to the dealer could be used for any number of corporate purposes, one of which would be purchasing automobiles from the dealer for leasing purposes. The

Department's own exhibit contains letters which indicate "advance trade-ins" are, under certain circumstances, proper trade-in deductions. In those instances, however, the purchasers must have been obligated to buy a new car within six months of turning in the old car, the obligation arising at the time the old vehicle was sold. Here, while the leasing company was bound to purchase all cars from the dealer, there was no obligation to purchase a new vehicle within six months of a sale to the dealer; the only time purchases were made by the leasing company was where a customer was ready to lease the vehicle. The use of cash in these transactions suggests separate sales rather than a purchase/trade-in relationship (cf. *Bell Lines, Inc., v. United States* (4th Cir. 1973), 480 F.2d 710; *Carlton v. United States* (5th Cir. 1967), 385 F.2d 238). Under the facts of this case, we hold that it was erroneous for the trial court to conclude these transactions constituted a trade-in under section 1 of the Illinois Retailers' Occupation Tax Act.

It is undisputed that sales tax consequences occur when a new vehicle is sold by the dealer to the leasing company. After the vehicle is sold to the dealer by the leasing company, sales tax is collectible on the vehicle's sale by the dealer to the public. This court is not "double taxing" the dealer; this decision only disallows a deduction against sales tax otherwise properly due.

Since we find the agreement between the dealer and the leasing company does not qualify the value of the 66 vehicles to be proper deductions as trade-ins under section 1 of the Illinois Retailers' Occupation Tax Act, the judgment of the trial court is reversed and the cause remanded with directions to enter judgment for the Department of Revenue.

Reversed and remanded with directions.

REARDON, P. J., and TRAPP, J., concur.