MICHAEL PERNALSKI, Plaintiff-Appellant, v. ILLINOIS RACING BOARD
*et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—96—3912

Opinion filed March 11, 1998.

Kaplan & Papadakis, P.C., of Chicago (Eric D. Kaplan and Dean Gournis, of counsel), for appellant.

George S. Lalich and Joseph R. Lemersal, both of Nash, Lalich &

Kralovec, of Chicago, for appellees Balmoral Park Trot, Inc., and Balmoral Racing Club, Inc.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick, Assistant Attorney General, of counsel), for appellees Illinois Racing Board and its members.

JUSTICE GORDON delivered the opinion of the court:

## BACKGROUND

This is an appeal under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)) from the affirmance by the circuit court of the determination of the Illinois Racing Board (Board) affirming the action taken by defendant, Balmoral Park Trot, Inc. (Balmoral), banning plaintiff, an owner and trainer of harness horses, from racing on its track.

There is no dispute in the record that in January 1995 Balmoral excluded plaintiff from racing at Balmoral pursuant to section 9(e) of the Illinois Horse Racing Act of 1975 (230 ILCS 5/9(e) (West 1994)) (the Act). Pursuant to Pernalski's request, the Board held a hearing as required by section 14a of the Act (230 ILCS 5/14a (West 1994)). The evidence adduced at the hearing established that plaintiff drew two separate one-year suspensions from the Board, in 1990 and 1994, respectively. In 1990, plaintiff was suspended for one year after a horse which he trained (Edgewood Dandy) tested positive for thiobendazol, promazine sulphoxide and etorphine, all of which were drugs whose use was prohibited. In 1993, a horse trained by plaintiff (Mountain Shannon) tested positive for caffeine, resulting in plaintiff's second suspension by the Board for a period of one year commencing January 9, 1994. The evidence also established that in 1991, following the first suspension in 1990, plaintiff was found to have engaged in the prohibited practice known as "milkshaking," which involves forced ingestion by a horse of high levels of sodium bicarbonate potassium and/or lactic acid or related substances within hours prior to a race.

On January 15, 1995, after plaintiff served his second suspension terminating on January 8, 1995, the Board approved plaintiff's application for a new license. Plaintiff thereupon met with the management of Balmoral to advise it of his intent to resume racing there. About one week thereafter, Balmoral advised plaintiff that it decided to exclude plaintiff from racing on its track pursuant to section 9(e) of the Act. The reasons attributed by Balmoral management for its exclusion were plaintiff's past conduct, including his foregoing two suspensions and his milkshaking violation.

Plaintiff thereafter obtained a temporary restraining order against enforcement of the Balmoral exclusion. Over plaintiff's objection, the Board heard testimony about misconduct by the plaintiff that occurred within the duration of the temporary restraining order after the Balmoral decision to exclude him from its track. The nature of the misconduct involved plaintiff's attempt to secretly stable two horses on Balmoral's track without Balmoral's authorization.

After the hearing, the Board issued its order upholding Balmoral's exclusion of Pernalski from its race track. Pernalski thereafter filed his complaint for administrative review. The circuit court affirmed the Board's decision, and Pernalski appeals.

On appeal, plaintiff claims that the exclusion by Balmoral, based upon events that preceded the Board's 1994 suspension and subsequent license renewal, disciplined the plaintiff twice for the same misconduct in violation of our supreme court's decision in *Coleman v. Illinois Racing Board*, 124 Ill. 2d 218, 529 N.E.2d 520 (1988). Plaintiff further claims that the Board should not have heard evidence concerning any misconduct of the plaintiff with regard to his alleged illicit stabling since that act occurred after Balmoral made its exclusion decision. Lastly, plaintiff contends that, without the foregoing stabling evidence, Balmoral's determination to exclude plaintiff lacks the support of any competent evidence and is therefore contrary to the manifest weight of the evidence.

## THE JURISDICTION QUESTION

Before reaching the merits of plaintiff's appeal, we must first consider the Board's contention that we lack subject matter jurisdiction to entertain this appeal. The Board contends that plaintiff filed his complaint for administrative review prematurely before the Board issued a written order of disposition. There is no dispute that plaintiff filed his complaint for administrative review on September 11, 1995, eight days before the Board issued its written order dated September 19, 1995. Accordingly, the Board contends that the trial court had no jurisdiction to consider plaintiff's appeal pursuant to a prematurely filed complaint.

Section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 1994)) provides that an action for administrative review must commence "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." A "copy of the decision" denotes a writing. Moreover, the Board's internal regulations provide that "[o]rders disposing of contested matters upon the merits shall set forth the Board's findings of fact and conclusions of law and shall be served by certified mail." 11 Ill. Adm. Code § 204.140 (1996).

Collectively, these provisions have been construed to require the filing of a written decision as a prerequisite for the commencement of an action for administrative review. See *Batka v. Board of Trustees,* 227 Ill. App. 3d 735, 592 N.E.2d 230 (1992). In *Batka,* the defendant was asked to determine the amount and effective date of the benefits to which plaintiff was entitled. Instead of issuing a written order, the agency simply commenced to pay a certain amount as of a given date. The court in *Batka* held that the plaintiff was entitled, via an action for *mandamus,* to compel the defendant agency to issue a written decision because without it the plaintiff would be deprived of his right to appeal the administrative order.

Defendant Board also purports to derive support for its jurisdiction argument from our decision in *Lutheran General Health Care System v. Department of Revenue,* 231 Ill. App. 3d 652, 595 N.E.2d 1214 (1992). In that case, the Illinois Department of Revenue omitted a page of its written decision from the written order which it served upon the plaintiffs denying them a charitable real estate tax exemption. The plaintiffs failed to file their complaint for administrative review within 35 days of their receipt of the fragmented decision. Defendant, in seeking dismissal of the appeal for lack of jurisdiction, contended that "the portion of the decision mailed to plaintiff *** was sufficient to advise plaintiffs of Nafziger's [the administrative law judge's] findings of fact and conclusions of law." *Lutheran General,* 231 Ill. App. 3d at 659, 595 N.E.2d at 1219. In holding that the 35 days did not commence to run from receipt of the incomplete order, the court held that although the portion sent included the determination to deny the exemption, it did not fully inform the defendants of what claim should be addressed in their complaint, stating:

> "The failure to include a full page of the 7½-page decision was not a minor omission. Until a complete copy of the decision was received, plaintiffs had no way of knowing that Nafziger failed to address the school exemption issue; nor could they know the precise grounds on which Nafziger relied in denying them tax-exempt status. While plaintiffs could have filed a complaint for administrative review without this information, we believe it would be unfair to require them to file a complaint where they can only guess at the contents of the decision they are seeking to have reviewed." 231 Ill. App. 3d at 660, 595 N.E.2d at 1219.

Plaintiff contends that neither *Batka* nor *Lutheran General* should control in this case. He argues that, in this case, the decision of the Board was announced from the bench and fully transcribed in the report of proceedings by the court reporter and that a copy of that transcript was obtained by plaintiff's counsel (apparently on his own

initiative prior to filing the complaint for administrative review). He also contends that he submitted an affidavit of his counsel, which is not factually challenged, that the Board advised his counsel that its written ruling may be delayed but that, if he proceeded to appeal before its issuance, the Board would not object thereto. Plaintiff therefore contends that the appeal was not premature in that the rationale underlying the requirement of a written order is that of providing adequate notice, which plaintiff urges was satisfied by the transcript of the Board's oral order.

In support of his position, plaintiff cites to the decision in *Johnson v. Machetti*, 228 Ill. App. 3d 420, 592 N.E.2d 1149 (1992). In that case plaintiff, a police officer, applied to the Peoria police board for disability pension benefits. At the hearing on October 13, 1988, the board awarded the plaintiff a non-job-related disability of 50% of his annual salary. On October 27, 1988, the board notified plaintiff of its decision by letter stating that the Board decided to grant him a pension in the amount of $1,549.10 per month. Plaintiff computed this amount to be equal to 50% of his salary. Instead of appealing, plaintiff submitted to the Board a doctor's report stating that his disability was job related. One year later, in November 1989, the police board sent plaintiff a letter indicating that its October 13, 1988, decision was final. Plaintiff then filed his complaint for administrative review. Defendant moved to dismiss on the grounds that plaintiff's 35 days to appeal expired after 35 days from plaintiff's receipt of the police board's letter of October 27, 1988. That motion was sustained notwithstanding plaintiff's contention that the letter was insufficient because it did not specify that the award was for 50% of his salary instead of the 65% disability pension that he sought. In holding that the letter comprised adequate notice, the court declared:

> "The letter did inform plaintiff that he would receive $1,549.10 per month, which was an amount equal to 50% of his salary. Plaintiff, in his amended complaint, admits that the 1988 letter put him on notice that he had received a non-line-of-duty disability pension. On appeal, plaintiff admits that when he received the letter he made the calculation and discovered that he had been awarded a pension at the rate of 50%. The record reflects plaintiff was present at the October 13, 1988, Pension Board meeting where the matter of his disability pension was discussed. Plaintiff presented letters from doctors and other information to the Pension Board. A motion was made, seconded and passed that plaintiff be awarded a 50% non-job-related disability pension based on an annual salary of $37,178.36, resulting in a monthly disability benefit of $1,549.10 per month. This is the same figure that appeared in

the October 27, 1988, letter. We find no merit to plaintiff's contention that the letter failed to inform him that he had not been awarded a line of duty disability pension." *Johnson*, 228 Ill. App. 3d at 422-23, 592 N.E.2d at 1150-51.

Based upon *Johnson*, plaintiff in the instant case contends that the transcript of the oral decision was sufficient notice and analogous to the letter sent by the police board in *Johnson*. We disagree.

■ There can be no dispute that, under the Administrative Review Law, as well as under the internal rules and regulations of the Board, an adjudicative order of the Board must be in writing and served upon the affected party by certified mail. See 735 ILCS 5/3—103 (West 1994); 11 Ill. Adm. Code § 204.140 (1996). The fact that a party may obtain a copy of the transcript of the administrative agency session that discusses and arrives at a determination of a contested matter cannot substitute for the written order that the agency must then serve upon the party whose rights have been adjudicated. Otherwise, it can be argued that the 35-day period must then commence from the date that an oral determination is transcribed. Plaintiff may contend that the key factor would be the date upon which the transcript containing the agency's oral determination is obtained. However, this would make commencement of the 35-day period dependent upon the unilateral action of the prospective appellant to initiate obtaining a transcript, rather than upon the agency. Moreover, what would the result be if, instead of purchasing or otherwise acquiring a transcript, the prospective appellant merely reads a transcript in someone else's possession or is told by another of its contents? Even more overridingly, what if that party is merely present at the hearing when the agency arrives at its decision? Why should transcription of the decision and its acquisition by a party become an additional prerequisite, when that transcription involves what is, in reality, a private transaction between the court reporter and the acquiring party? Surely, the event that would trigger the 35-day period within which to commence administrative review cannot be left to depend upon such desultory factors as when the appellant actually learned of the decision or the contents of the transcript. To do so could jeopardize rather than expand the appellant's right to appeal should he choose to wait until he is served with an actual written order before filing his complaint for administrative review. The timeliness of that complaint would be subject to challenge if in fact the appellant had earlier obtained or become apprised of the transcript containing the oral determination of the agency. Appellant cannot under the rules claim in both directions, namely, that he should be free to wait for actual receipt of the written order or, at his

option, file his complaint for review upon learning of the Board's oral decision by unilaterally obtaining a transcript or otherwise. Nor have the parties contended that, once having voted, the Board is precluded from reconsidering its vote and changing its determination before serving its written order upon the impacted party. Thus, the finality of the order cannot be presumed until it is actually served upon the party whose rights are adjudicated.

Plaintiff's reliance upon *Johnson v. Machetti* is ill advised. In *Johnson*, there is no dispute that the letter of the police board would satisfy the prerequisites of a written order if it contained all the essential information required in an order. None of the parties took issue, nor could they have, with the fact that the order was embodied in the form of an official letter of notification. In *Johnson* the pivotal question was whether the order, albeit in letter form, contained sufficient information to advise the plaintiff that his request for a 65% pension was rejected in favor of a 50% pension. The court quite correctly held that since the letter did convey the actual dollar amount of the monthly pension awarded, there was no necessity to also note that the dollar amount was 50% rather than 65% of plaintiff's actual monthly salary since that amount was readily computable. In fact, the plaintiff admitted that, on his own initiative, he made the simple arithmetic calculation to determine that the award was for 50% of his pension. Thus the plaintiff here cannot rely upon *Johnson* to dispense with the requirement of a written order altogether where the plaintiff otherwise becomes cognizant of the agency's decision.

Plaintiff further argues, based upon the affidavit of his counsel, that the Board agreed to refrain from objecting to the jurisdiction of the circuit court should plaintiff decide to appeal before receiving its written order. Consequently, plaintiff contends that the Board waived any jurisdictional impediment arising from his otherwise premature appeal and is otherwise estopped from raising any jurisdictional objection. Again, we must disagree.

■ ■ The premature filing of a complaint for administrative review is insufficient to confer jurisdiction upon the court over the subject matter of the appeal. See *International Harvester v. Industrial Comm'n*, 71 Ill. 2d 180, 374 N.E.2d 182 (1978); *Buroff v. Board of Fire & Police Commissioners*, 248 Ill. App. 3d 626, 618 N.E.2d 930 (1993). Since the premature filing of a complaint for review fails to confer subject matter jurisdiction upon the courts, it is not subject to a claim of waiver or estoppel in that the parties even by overt stipulation may not confer subject matter jurisdiction upon the court where none otherwise exists. See *Currie v. Lao*, 148 Ill. 2d 151, 592 N.E.2d 977 (1992) (issue of subject matter jurisdiction cannot be waived);

*Smith v. Jones*, 113 Ill. 2d 126, 130, 497 N.E.2d 738, 739 (1986) ("it is axiomatic that subject matter jurisdiction cannot be waived"). Thus, it is clear that the circuit court was without jurisdiction to hear plaintiff's appeal.

Moreover, the fact that the Board did ultimately serve a written order upon the plaintiff on September 19, 1995, eight days after the plaintiff filed his complaint for administrative review on September 11, 1995, did not serve to retroactively confer jurisdiction on the circuit court. See *Buroff*, 248 Ill. App. 3d at 630-31, 618 N.E.2d at 933 (if a complaint for administrative review is filed prematurely, a new complaint must be filed, *i.e.*, a new action must be commenced when the action taken by the agency becomes final and appealable). Consequently, when the complaint was not refiled within 35 days after the agency determination became final and appealable, which in this case would have been 35 days from September 19, 1995, when the Board's written letter was served, the right to appeal was lost. See *Buroff*, 248 Ill. App. 3d 626, 618 N.E.2d 930. See also *Lockett v. Chicago Police Board*, 133 Ill. 2d 349, 549 N.E.2d 1266 (1990).

## A BRIEF LOOK AT THE MERITS

We note that even if jurisdiction were properly conferred upon the circuit court, the result would be no different in that the determination of the Board would have to be affirmed on its merits. Briefly on the merits, plaintiff contends that neither the Board, acting on its own initiative, nor Balmoral, as an organization licensee, had the right to sanction the plaintiff more than once for the same violation. In support plaintiff relies upon the decision in *Coleman v. Illinois Racing Board*, 124 Ill. 2d 218, 529 N.E.2d 520 (1988). There, the Illinois Supreme Court held that where a groom was suspended by the Board for two years for using a goading device, the Board could not thereafter, once the two suspensions passed, refuse to reinstate the groomer's license by reason of the offense for which he was given the two-year suspension. The court held that once the Board acted upon a violation to grant a given sanction, it could not thereafter enhance the severity of that sanction by transforming the two-year suspension into a permanent one.

Plaintiff in the instant case urges this court to apply *Coleman* even though Balmoral, rather than the Board, excluded plaintiff from its track. Plaintiff argues that that fact is of no consequence since Balmoral's right is derivative of the Board and not original to it. We disagree.

We first note defendants' contention that plaintiff waived this argument in failing to raise it before the Board. Plaintiff in his brief

does not respond to this contention, nor does the record reflect that this contention was ever raised before the Board. Accordingly, we must agree with the defendants that arguments not raised before an administrative agency are waived on administrative review. *Edwards v. Illinois Racing Board*, 187 Ill. App. 3d 287, 543 N.E.2d 172 (1989).

Moreover, even if not otherwise waived, plaintiff cannot prevail in his contention. Contrary to plaintiff's contention that Balmoral's power to exclude is derived from a delegation of authority from the Board, it is clear that the power of exclusion of the racetrack management is original to it. This is made clear under the express provisions of section 9(e) of the Horse Racing Act (230 ILCS 5/9(e) (West 1994)), which provides as follows:

> "The Board, and any person or persons to whom it delegates this power, may eject or exclude from any race meeting or organization grounds or any part thereof, any occupation licensee or any other individual whose conduct or reputation is such that his presence on organization grounds may, in the opinion of the Board, call into question the honesty and integrity of horse racing or interfere with the orderly conduct of horse racing; provided, however, that no person shall be excluded or ejected from organization grounds solely on the grounds of race, color, creed, national origin, ancestry, or sex. *The power to eject or exclude occupation licensees may be exercised for just cause by the organization licensee or the Board, subject to subsequent hearing by the Board as to the propriety of said exclusion.*" (Emphasis added.)

The last sentence of this statute is explicit in treating the organization licensee as an independent authority able to sanction trainers and other personnel operating on its grounds. In so doing, the organization licensee is not operating as an arm of the Board, but as a private business licensee subject only to Board review as to the propriety of the exclusion. See *Phillips v. Graham*, 86 Ill. 2d 274, 427 N.E.2d 550 (1981), stating:

> "There is no such delegation of a recognized legislative power here. The right to exclude patrons from a private enterprise, here a racetrack, has long been recognized at common law. (See, *e.g.*, *Marrone v. Washington Jockey Club* (1913), 227 U.S. 633, 57 L. Ed. 679, 33 S. Ct. 401; *Flores v. Los Angeles Turf Club, Inc.* (1961), 55 Cal.2d 736, 361 P.2d 921, 13 Cal. Rptr. 201; *Tamelleo v. New Hampshire Jockey Club, Inc.* (1960), 102 N.H. 547, 163 A.2d 10; Annot., 90 A.L.R.3d 1361 (1979).) Though it cannot be said that section 9(e), which goes further and permits the exclusion of occupation licensees, is a precise codification of the common law right, it is clear that the authority to exclude here is not derived

from some recognized legislative power, unique to the legislature, that has been delegated to organization licensees. It is simply, as the State argues, a grant of authority by the legislature." 86 Ill. 2d at 288-89, 427 N.E.2d at 556.

Here, unlike the facts in *Coleman*, we are not confronted by an attempt of a single authority to sanction a party twice for the same violation. Rather, there are two separate sanctions by two independent authorities. The Board properly reinstated the plaintiff's license after he completed his suspension. Only Balmoral, acting by itself, considered the violations for which he was previously suspended by the Board, at least as a partial predicate for its action to exclude the plaintiff. We note that unlike the sanction of the Board, which can have statewide application, the power of the racetrack can only extend to its own property.

Plaintiff next contends that Balmoral's sanction of exclusion was unreasonable, arbitrary and overly harsh. Plaintiff contends that, since 1990, he had committed only two infractions. The first involved a high blood gas violation and the second a caffeine violation. Plaintiff cites to the testimony of Balmoral's general manager, Daniel Nemeth, who stated that no one ever before received a lifetime suspension for a single blood gas violation or, for that matter, for acts that already resulted in a suspension by the Board.

We first note that plaintiff conceded that he did not know the length of his suspension. Moreover, the plaintiff testified that he was advised by Nemeth that he could be reconsidered after six months to have his privileges restored. Moreover, here the plaintiff was not purportedly excluded for violation of a single blood gas test in 1993 or a single caffeine violation in 1994, but for his entire record, which included both the 1993 and 1994 violations cumulatively, as well as a 1990 violation for which he was also suspended by the Board wherein his horse tested positive for three drugs. In addition, the record reflects that plaintiff was fined in 1975 for premature removal of a horse from the drug list;[1] in 1978 for "negligence of a child"; and in 1989 for failure to honor a declaration to race.

Under the provisions of section 9(e) of the Horse Racing Act, the Board is given the power to eject or exclude from any racing meet or organization any occupation licensee

"whose conduct or reputation is such that his presence on organization grounds may, in the opinion of the Board, call into question the honesty and integrity of horse racing or interfere with the orderly conduct of horse racing." 230 ILCS 5/9(e) (West 1994).

---

[1]Apparently, the transcript of the agency hearing erroneously shows the fine as having occurred in 1995 rather than 1975.

The constitutionality of this power has been explicitly upheld by our supreme court in *Phillips v. Graham*, 86 Ill. 2d 274, 427 N.E.2d 550 (1981).

The misconduct record of the plaintiff is therefore sufficient to satisfy the statutory standard applicable to Balmoral's decision to exclude plaintiff on an indefinite basis subject to the possibility of ultimate reinstatement. That decision cannot therefore be deemed to be arbitrary or unreasonably harsh or contrary to the manifest weight of the evidence.

Plaintiff next contends that to the extent that plaintiff's exclusion is predicated upon a blood gas violation, that action violated a blood gas agreement entered into between Balmoral and the Illinois Harness Horseman's Association (IHHA). Under that agreement if the blood of a horse tested is above a certain level on three readings, the trainer should request that the horse be scratched. Plaintiff contends that, under the foregoing agreement, the exclusive remedy for high blood gas was that the horse be scratched.

Plaintiff's contention must fail under the explicit provision of that agreement which provides, at paragraph 8 thereof:

> "Notwithstanding any provision of the Main Agreement or this Amendment, Licensee retains its right to exclude occupation licensees as provided in the Illinois Horse Racing Act of 1975 as amended."

Under this express provision the agreement does not purport to preempt the remedies or sanctions available under the horse racing statute. Thus, a trainer is not necessarily free to "milkshake" a horse, as the blood gas violation is referred to in the racing vernacular, with impunity subject only to a "scratching" penalty, if, based on his record, the trainer meets the exclusion criteria of section 9(e) of the Horse Racing Act.

Lastly, plaintiff contends that he did not receive a fair hearing in that Balmoral was permitted to introduce evidence of a violation of track rules involving stabling of a horse that occurred after Balmoral notified plaintiff of his exclusion from its track premises. Plaintiff has not cited to any specific authority to show that the Board was not free to consider *post hoc* evidence showing subsequent violations. Thus, this argument is technically waived. See, *e.g.*, *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994). However, even if we were to agree that such evidence is irrelevant, it would constitute harmless error in that, as previously discussed, there was ample evidence of other violations by the plaintiff to justify Balmoral's sanction to exclude him from racing on its premises.

Accordingly, even if the circuit court had jurisdiction over

plaintiff's administrative appeal, its affirmance on the merits was warranted. However, since we have found by our jurisdictional analysis that plaintiff's complaint for administrative review was prematurely filed, depriving the circuit court of jurisdiction, we must as a consequence dismiss this appeal for lack of subject matter jurisdiction under the Administrative Review Law.

Appeal dismissed.

LEAVITT, P.J., and CAHILL, J., concur.